(No. 56306.—

JACK A. CONEY, Adm'r, Appellee, v. J. L. G. INDUSTRIES, INC., Appellant.

*Opinion filed May 18, 1983.—Modified on denial*
*of rehearing September 30, 1983.*

106

Cassidy & Mueller, of Peoria (David B. Mueller and David F. Buysse, of counsel), for appellant.

Richard L. Steagall and John P. Nicoara, of Peoria, for appellee.

Kiesler & Berman, of Chicago (Robert L. Kiesler and Lyle F. Koester, of counsel), for *amicus curiae* Chicago Park District.

Abramson & Fox, of Chicago (John E. Guy, of counsel), for *amicus curiae* Illinois Defense Counsel.

John Bernard Cashion, George M. Elsener, and William J. Harte, Ltd., all of Chicago, for *amicus curiae* Illinois Trial Lawyers Association.

Phelan, Pope & John, Ltd., of Chicago (Michael A. Pope, Peter C. John, Mary Patricia Benz, and Suzanne M. Metzel, of counsel), for *amicus curiae* Commonwealth Edison Company.

Baker & McKenzie, of Chicago (Francis D. Morrissey, Thomas F. Tobin, John T. Coleman, and J. Kent Mathewson, of counsel), for *amicus curiae* Motor Vehicle Manufacturers Association of the United States, Inc.

JUSTICE MORAN delivered the opinion of the court:

Clifford M. Jasper died as a result of injuries sustained on January 24, 1978, while operating a hydraulic aerial work platform manufactured by defendant, J. L. G. Industries, Inc. Plaintiff, Jack A. Coney, administrator of Jasper's estate, filed a two-count complaint in the circuit court of Peoria County under the wrongful death and survival acts (Ill. Rev. Stat. 1977, ch. 70, par. 1 *et seq.*, ch. 110½, par. 27—6) based on a strict products liability theory. Defendant filed two affirmative defenses. The first asserted that Jasper was guilty of comparative negligence or fault in his operation of the platform. The second contended that Jasper's employer, V. Jobst & Sons, Inc., was also guilty of comparative negligence in failing to instruct and train Jasper on the operation of the platform and by failing to provide a "groundman." In these defenses, defendant requested that its fault, if any, be compared to the total fault of all parties and any judgment against defendant reflect only its percentage of the overall liability, *i.e.*, that defendant not be held jointly and severally liable.

On plaintiff's motion, the trial court struck the defenses, but it certified three questions for appeal pursuant to Supreme Court Rule 308 (73 Ill. 2d R. 308). In an unpublished order, the appellate court denied defendant's application for leave to appeal, indicating the short record supplied did not provide sufficient facts to allow proper consideration of the policy questions involved. We allowed

defendant leave to appeal.

The three certified questions are:

"Whether the doctrine of comparative negligence or fault is applicable to actions or claims seeking recovery under products liability or strict liability in tort theories?

Whether the doctrine of comparative negligence or fault eliminates joint and several liability?

Whether the retention of joint and several liability in a system of comparative negligence or fault denies defendants equal protection of the laws in violation of U.S. Const. Amend. XIV, §1 and Ill. Const. 1970, §2 as to causes of action arising on or after [*sic*] March 1, 1978. (Ill. Rev. Stat. 1979, ch.70, §301 *et seq.*)?"

I

COMPARATIVE FAULT AND STRICT LIABILITY

In *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, this court eliminated the need for privity of contract or proving the negligence of the manufacturer and instead imposed strict liability in tort as set out in Restatement (Second) of Torts section 402A (1965):

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

In adopting strict liability in tort, this court said:

"[P]ublic interest in human life and health, the invitations

and solicitations to purchase the product and the justice of imposing the loss on the one creating the risk and reaping the profit are present and as compelling in cases involving motor vehicles and other products, where the defective condition makes them unreasonably dangerous to the user, as they are in food cases." 32 Ill. 2d 612, 619.

But imposition of strict liability was not meant to make the manufacturer an absolute insurer. (*Liberty Mutual Insurance Co. v. Williams Machine & Tool Co.* (1975), 62 Ill. 2d 77, 85; *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 623.) The plaintiff must prove that the injury or damage resulted. from the condition of the product, that the condition was an unreasonably dangerous one, and that the condition existed at the time the product left the manufacturer's control. (*Woodill v. Parke Davis & Co.* (1980), 79 Ill. 2d 26, 31; *Rios v. Niagara Machine & Tool Works* (1974), 59 Ill. 2d 79, 83; *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 623.) Moreover, the court has heretofore followed the reasoning of the Restatement concerning the available defenses to a strict liability. action. It has been held that a manufacturer can assert a user's negligence as a complete bar to recovery when it rises to the level of misuse of the product, or assumption of the risk; but contributory negligence is not a defense. *Liberty Mutual Insurance Co. v. Williams Machine & Tool Co.* (1975), 62 Ill. 2d 77, 81; *Williams v. Brown Manufacturing Co.* (1970), 45 Ill. 2d 418; Restatement (Second) of Torts sec. 402A, comment *n* (1965).

Traditionally in negligence actions, however, any contributory negligence by the plaintiff was an absolute defense which barred recovery. (*Mueller v. Sangamo Construction Co.* (1975), 61 Ill. 2d 441, 446; *Maki v. Frelk* (1968), 40 Ill. 2d 193, 195.) In response to the harshness of this doctrine, the court adopted comparative negligence in *Alvis v. Ribar* (1981), 85 Ill. 2d 1, and indicated that this concept produced "a more just and socially desirable distri-

bution of loss" and was "demanded by today's society." (85 Ill. 2d 1, 17.) In *Alvis*, we adopted the "pure" form of comparative negligence, reasoning that it "is the only system which truly apportions damages according to the relative fault of the parties and, thus, achieves total justice." 85 Ill. 2d 1, 27.

In the instant case, defendant argues that *Alvis* requires the adoption of a comparative fault system in strict products liability cases. Defendant maintains "total justice" can only be achieved where the relative fault of all the parties is considered in apportioning damages. To illustrate its argument, defendant points to the anomalous situation where, in a single case with alternate counts of negligence and strict liability, the identical conduct by the plaintiff which amounts to an assumption of the risk will completely bar recovery in the strict liability count, yet, as a result of *Alvis*, will only reduce his award under the negligence count. Moreover, if the plaintiff is only contributorily negligent, he recovers all his damages under strict liability, but his recovery is diminished under the negligence count. Defendant argues that common sense mandates an approach which is consistent in its treatment of all the parties to an action, whether founded on common law negligence or strict liability.

We are not the first to consider the impact of comparative negligence upon strict liability. Some jurisdictions have declined to apply comparative negligence or fault principles in strict liability actions:

| | |
|---|---|
| Colorado | *Kinard v. Coats Co.* (1976), 37 Colo. App. 555, 553 P.2d 835; but see Colo. Rev. Stat. sec. 13—21—406 (Supp. 1982), as interpreted in *Welch v. F. R. Stokes, Inc.* (D. Colo. 1983), 555 F. Supp. 1054. |
| Nebraska | *Melia v. Ford Motor Co.* (8th Cir. |

1976), 534 F.2d 795 (applying Nebraska law).

Oklahoma — *Kirkland v. General Motors Corp.* (Okla. 1974), 521 P.2d 1353 (comparative negligence statute not applicable to products liability).

Rhode Island — *Roy v. Star Chopper Co.* (1st Cir. 1978), 584 F.2d 1124, *cert. denied* (1979), 440 U.S. 916, 59 L. Ed. 2d 466, 99 S. Ct. 1234 (applying Rhode Island law).

South Dakota — *Smith v. Smith* (S.D. 1979), 278 N.W.2d 155.

The vast majority, though, have found comparative negligence theory applicable in strict liability cases.

Alaska — *Butaud v. Suburban Marine & Sporting Goods, Inc.* (Alaska 1976), 555 P.2d 42.

Arkansas — Ark. Stat. Ann. secs. 27—1763 to 27—1765 (1979).

California — *Daly v. General Motors Corp.* (1978), 20 Cal. 3d 725, 575 P.2d 1162, 144 Cal. Rptr. 380.

Florida — *West v. Caterpillar Tractor Co.* (Fla. 1976), 336 So. 2d 80.

Idaho — *Sun Valley Airlines, Inc. v. Avco-Lycoming Corp.* (D. ·Idaho 1976), 411 F. Supp. 598 (applying Idaho law).

Kansas — *Kennedy v. City of Sawyer* (1980), 228 Kan. 439, 618 P.2d 788.

Maine — Me. Rev. Stat. tit. 14, sec. 156 (1964).

Michigan — Mich. Comp. Laws Ann. sec 600.2949 (Supp. 1982).

Minnesota — *Busch v. Busch Construction, Inc.* (Minn. 1977), 262 N.W.2d 377.

| | |
|---|---|
| Mississippi | *Edwards v. Sears, Roebuck & Co.* (5th Cir. 1975), 512 F.2d 276 (applying Mississippi law). |
| Montana | *Zahrte v. Sturm, Ruger & Co.* (D. Mont. 1980), 498 F. Supp. 389 (stating Montana law). |
| New Hampshire | *Reid v. Spadone Machine Co.* (1979), 119 N.H. 457, 404 A.2d 1094; *Thibault v. Sears, Roebuck & Co.* (1978), 118 N.H. 802, 395 A.2d 843. |
| New Jersey | *Suter v. San Angelo Foundry & Machine Co.* (1979), 81 N.J. 150, 406 A.2d 140. |
| New York | N.Y. Civ. Prac. Law sec. 1411 (McKinney 1976). |
| Oregon | *Wilson v. B. F. Goodrich* (1982), 292 Or. 626, 642 P.2d 644; *Baccelleri v. Hyster Co.* (1979), 287 Or. 3, 597 P.2d 351. |
| Utah | *Mulherin v. Ingersoll-Rand Co.* (Utah 1981), 628 P.2d 1301. |
| Washington | Wash. Rev. Code Ann. secs. 4.22.005 to 4.22.015 (Supp. 1982). |
| Wisconsin | *Dippel v. Sciano* (1967), 37 Wis. 2d 443, 155 N.W.2d 55. |

In the case at bar, plaintiff argues that applying comparative fault principles in strict liability actions would raise the conduct of the product user to a position equal to that of the manufacturer in regard to the prevention of injury; and that it would thereby give undue advantage to the manufacturer. The Illinois Trial Lawyers Association, in their *amicus curiae* brief, assert that comparative fault applied in this instance would undermine the policy basis that led to the imposition of strict liability. Further, they argue that reducing a plaintiff's recovery according to his

fault would lessen the manufacturer's incentive to design and market a defect-free, safe product. As authority for their position, plaintiff and *amicus curiae* rely primarily on *Smith v. Smith* (S.D. 1979), 278 N.W.2d 155, *Seay v. Chrysler Corp.* (1980), 93 Wash. 2d 319, 609 P.2d 1382, *Kinard v. Coats Co.* (1976), 37 Colo. App. 555, 553 P.2d 835, and the dissenting opinions in *Daly v. General Motors Corp.* (1978), 20 Cal. 3d 725, 575 P.2d 1162, 144 Cal. Rptr. 380. We find this authority unpersuasive.

In *Smith v. Smith* (S.D. 1979), 278 N.W.2d 155, the issue before the court was which defenses were available to a manufacturer in a strict products liability action. Following the traditional analysis set out in section 402A, comment *n* of the Restatement, the court held that contributory negligence was not a defense, but misuse and assumption of the risk would bar recovery. In a footnote, without extended discussion, the court summarily rejected applying comparative fault principles, indicating it would negate the underlying basis of strict liability and present unworkable problems for the jury.

In *Kinard v. Coats Co.* (1976), 37 Colo. App. 555, 553 P.2d 835, the court refused to extend the concept of comparative fault found in the Colorado comparative negligence statute (Colo. Rev. Stat. sec. 13—21—111 (1973)) to actions sounding in strict liability. However, the recent enactment of a comparative fault provision in Colorado's product liability statute (Colo. Rev. Stat. sec. 13—21—406 (Supp. 1982)) renders this case of little precedential value to the issue at bar. See *Welch v. F. R. Stokes, Inc.* (D. Colo. 1983), 555 F. Supp. 1054.

Similarly, the court in *Seay v. Chrysler Corp.* (1980), 93 Wash. 2d 319, 609 P.2d 1382, held that the Washington comparative negligence statute did not apply to strict liability cases. A recent Washington statute, however, has been interpreted as mandating that comparative fault be applied in strict liability cases as a damage-reducing factor. See

*South v. A. B. Chance Co.* (1981), 96 Wash. 2d 439, 635 P.2d 728.

We believe that application of comparative fault principles in strict products liability actions would not frustrate this court's fundamental reasons for adopting strict products liability as set out in *Suvada.* The plaintiff will still be relieved of the proof problems associated with negligence and warranty actions. Privity and a manufacturer's negligence continue to be irrelevant. Nor would comparative fault lessen the manufacturer's duty to produce reasonably safe products. The manufacturer's liability remains strict; only its responsibility for damages is lessened by the extent the trier of fact finds the consumer's conduct contributed to the injuries. *Daly v. General Motors Corp.* (1978), 20 Cal. 3d 725, 575 P.2d 1162, 144 Cal. Rptr. 380.

Further, the risk associated with the product defect is still spread among all consumers. Only that portion due to plaintiff's own conduct or fault is borne by the plaintiff. Where the allocation of losses properly can be apportioned, we see no reason to spread the cost of the loss resulting from plaintiff's own fault on to the consuming public. See *Daly v. General Motors Corp.* (1978), 20 Cal. 3d 725, 737-38, 575 P.2d 1162, 1169, 144 Cal. Rptr. 380, 387; D. Fischer, *Products Liability—Applicability of Comparative Negligence,* 43 Mo. L. Rev. 431, 433 (1978).

Plaintiff and *amicus curiae* next argue that the comparison of the plaintiff's fault with the defendant's defective product is a comparison of noncomparables, an attempt to compare "apples and oranges," and that this comparison cannot be applied logically and consistently in strict products liability cases. See *Daly v. General Motors Corp.* (1978), 20 Cal. 3d 725, 575 P.2d 1162, 144 Cal. Rptr. 380 (Jefferson and Mosk, JJ., dissenting).

Although it appears theoretically difficult to balance the defendant's strict liability against the user's negligence, other courts and their juries have been able to do so. In

this regard, Professor Schwartz said:

"It is true that the jury might have some difficulty in making the calculation required under comparative negligence when defendant's responsibility is based on strict liability. Nevertheless, this obstacle is more conceptual than practical. The jury should always be capable, when the plaintiff has been objectively at fault, of taking into account how much bearing that fault had on the amount of damage suffered and of adjusting and reducing the award accordingly. Triers of fact *are* apparently able to do this, and the benefits from the approach suggest that it be applied in all comparative negligence jurisdictions." V. Schwartz, Comparative Negligence sec. 12.7, at 208-09 (1974).

A manufacturer is under a nondelegable duty to produce a product which is reasonably safe. (*Anderson v. Hyster Co.* (1979), 74 Ill. 2d 364, 368; *Rios v. Niagara Machine & Tool Works* (1974), 59 Ill. 2d 79, 85.) Defendant contends that when a manufacturer breaches this duty and places a defective product on the market, he is at "fault." Correspondingly, it argues, the plaintiff has a duty to exercise ordinary care in using the product; breach of this duty creates his "fault." Defendant maintains that these two types of "fault" should not be compared against each other in determining liability. Rather, they should be compared in terms of the causative role each played in producing the total damages sustained. Defendant postulates that once plaintiff has established his *prima facie* case and after defendant is found strictly liable, then plaintiff's recovery should be reduced by that amount which his fault contributed to the damages.

The court in *Murray v. Fairbanks Morse* (3d Cir. 1979), 610 F.2d 149, came to a similar result. The court there said the key conceptual distinction between strict products liability and negligence is that in strict liability the plaintiff need not prove faulty conduct on the part of the defendant in order to recover. The focus is on the condition

of the product. In applying comparative negligence to strict products liability, the court stated a direct comparison of the defective product with the plaintiff's negligence is both conceptually and pragmatically inappropriate. "[T]he only conceptual basis for comparison is the causative contribution of each to the particular loss or injury. In apportioning damages we are really asking how much of the injury was caused by the defect in the product versus how much was caused by the plaintiff's own actions." 610 F.2d 149, 159. See also *Butaud v. Suburban Marine & Sporting Goods, Inc.* (Alaska 1976), 555 P.2d 42, 47 (Rabinowitz, J., concurring); *Busch v. Busch Construction, Inc.* (Minn. 1977), 262 N.W.2d 377; *Thibault v. Sears, Roebuck & Co.* (1978), 118 N.H. 802, 395 A.2d 843.

In *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, *cert. denied* (1978), 436 U.S. 946, 56 L. Ed. 2d 787, 98 S. Ct. 2849, this court resolved the issue of contribution between concurrent tortfeasors under the principles of comparative negligence. There it was said that "governing equitable principles require that ultimate liability for plaintiff's injuries be apportioned on the basis of the relative degree to which the defective product and the employer's conduct proximately caused them." 70 Ill. 2d 1, 14.

Similarly, we believe that equitable principles require that the total damages for plaintiff's injuries be apportioned on the basis of the relative degree to which the defective product and plaintiff's conduct proximately caused them. Accordingly, we hold that the defense of comparative fault is applicable to strict liability cases.

*Amicus curiae* argues that, if comparative fault is to be applied in strict products liability cases, we should not reduce a plaintiff's award if he merely fails to "inspect," "discover," or "guard against" a defective product. *Butaud v. Suburban Marine & Sporting Goods, Inc.* (Alaska 1976), 555 P.2d 42, 46; *Busch v. Busch Construction, Inc.*

(Minn. 1977), 262 N.W.2d 377, 394; *Thibault v. Sears, Roebuck & Co.* (1978), 118 N.H. 802, 395 A.2d 843; *Suter v. San Angelo Foundry & Machine Co.* (1979), 81 N.J. 150, 406 A.2d 140.

Following the Restatement, this court, in *Williams v. Brown Manufacturing Co.* (1970), 45 Ill. 2d 418, adopted misuse and assumption of the risk as complete defenses to a strict products liability action. But, at the same time, it was said there that "[c]ontributory negligence of the plaintiff is not a defense when such negligence consists merely in a failure to discover the defect in the product, or to guard against the possibility of its existence." (45 Ill. 2d 418, 423.) We adhere to this statement. We believe that a consumer's unobservant, inattentive, ignorant, or awkward failure to discover or guard against a defect should not be compared as a damage-reducing factor. As the court in *West v. Caterpillar Tractor Co.* (Fla. 1976), 336 So. 2d 80, 92, said: "The consumer or user is entitled to believe that the product will do the job for which it was built."

However, the defenses of misuse and assumption of the risk will no longer bar recovery. Instead, such misconduct will be compared in the apportionment of damages. Specifically, we hold: Once defendant's liability is established, and where both the defective product and plaintiff's misconduct contribute to cause the damages, the comparative fault principle will operate to reduce plaintiff's recovery by that amount which the trier of fact finds him at fault.

Thus, the defendant remains strictly liable for the harm caused by its defective product, except for that part caused by the consumer's own misconduct.

## II
### JOINT AND SEVERAL LIABILITY

The common law doctrine of joint and several liability holds joint tortfeasors responsible for the plaintiff's entire injury, allowing plaintiff to pursue all, some, or one of the

tortfeasors responsible for his injury for the full amount of the damages. *Paul Harris Furniture Co. v. Morse* (1956), 10 Ill. 2d 28, 43; *Nordhaus v. Vandalia R.R. Co.* (1909), 242 Ill. 166, 174; *Wabash, St. Louis & Pacific Ry. Co. v. Shacklet* (1883), 105 Ill. 364, 381.

Defendant asserts joint and several liability is a corollary of the contributory negligence doctrine. Prior to *Alvis,* a plaintiff who was guilty of even slight contributory negligence was barred from recovery. Defendant maintains that joint and several liability balanced this inequity by permitting a faultless plaintiff to collect his entire judgment from any defendant who was guilty of even slight negligence. With the adoption of comparative negligence where damages are apportioned according to each party's fault, defendant argues it is no longer rational to hold a defendant liable beyond his share of the total damages. Defendant relies primarily on a line of cases where joint and several liability was abolished or limited in the course of construing a statutory scheme of liability. *Brown v. Keill* (1978), 224 Kan. 195, 580 P.2d 867; *Laubach v. Morgan* (Okla. 1978), 588 P.2d 1071; *Howard v. Spafford* (1974), 132 Vt. 434, 321 A.2d 74; and *Bartlett v. New Mexico Welding Supply, Inc.* (1982), 98 N.M. 152, 646 P.2d 579.

The vast majority of jurisdictions, however, which have adopted comparative negligence have retained joint and several liability as a part of their comparative negligence doctrine:

| | |
|---|---|
| Alaska | *Arctic Structures, Inc. v. Wedmore* (Alaska 1979), 605 P.2d 426. |
| Arkansas | Ark. Stat. Ann. secs. 34—1001 to 34—1009 (1981). |
| California | *American Motorcycle Association v. Superior Court* (1978), 20 Cal. 3d 578, 578 P.2d 899, 146 Cal. Rptr. 182. |
| Colorado | Colo. Rev. Stat. sec. 13—50.5—103 (1977). |

| | |
|---|---|
| Connecticut | Conn. Gen. Stat. Ann. sec. 52—572o (Supp. 1982). |
| Florida | *Lincenberg v. Issen* (Fla. 1975), 318 So. 2d 386. |
| Georgia | *Gazaway v. Nicholson* (1940), 190 Ga. 345, 9 S.E.2d 154. |
| Idaho | *Tucker v. Union Oil Co.* (1979), 100 Idaho 590, 603 P.2d 156. |
| Maine | Me. Rev. Stat. tit. 14, sec. 156 (1965). |
| Michigan | *Conkright v. Ballantyne of Omaha, Inc.* (W.D. Mich. 1980), 496 F. Supp. 147. |
| Minnesota | *Maday v. Yellow Taxi Co.* (Minn. 1981), 311 N.W.2d 849. |
| Nebraska | *Royal Indemnity Co. v. Aetna Casualty & Surety Co.* (1975), 193 Neb. 752, 229 N.W.2d 183. |
| New Jersey | N.J. Stat. Ann. sec. 2A: 15—5.1 (Supp. 1982). |
| New York | *Kelly v. Long Island Lighting Co.* (1972), 31 N.Y.2d 25, 286 N.E.2d 241. |
| North Dakota | N.D. Cent. Code sec. 9—10—07 (1973). |
| Washington | Wash. Rev. Code Ann. sec. 4.22.030 (Supp. 1982). |
| Wisconsin | *Wisconsin Natural Gas Co. v. Ford, Bacon & Davis Construction Corp.* (1980), 96 Wis. 2d 314, 291 N.W.2d 825. |

Generally, four reasons have been advanced for retaining joint and several liability:

(1) The feasibility of apportioning fault on a comparative basis does not render an indivisible injury "divisible" for purposes of the joint and several liability rule. A concurrent tortfeasor is liable for the whole of an indivisible injury when his negligence is a proximate

cause of that damage. In many instances, the negligence of a concurrent tortfeasor may be sufficient by itself to cause the entire loss. The mere fact that it may be possible to assign some percentage figure to the relative culpability of one negligent defendant as compared to another does not in any way suggest that each defendant's negligence is not a proximate cause of the entire indivisible injury.

(2) In those instances where the plaintiff is not guilty of negligence, he would be forced to bear a portion of the loss should one of the tortfeasors prove financially unable to satisfy his share of the damages.

(3) Even in cases where a plaintiff is partially at fault, his culpability is not equivalent to that of a defendant. The plaintiff's negligence relates only to a lack of due care for his own safety while the defendant's negligence relates to a lack of due care for the safety of others; the latter is tortious, but the former is not.

(4) Elimination of joint and several liability would work a serious and unwarranted deleterious effect on the ability of an injured plaintiff to obtain adequate compensation for his injuries. *American Motorcycle Association v. Superior Court* (1978), 20 Cal. 3d 578, 578 P.2d 899, 146 Cal. Rptr. 182. See *Arctic Structures, Inc. v. Wedmore* (Alaska 1979), 605 P.2d 426; *Tucker v. Union Oil Co.* (1979), 100 Idaho 590, 603 P.2d 156; *Seattle First National Bank v. Shoreline Concrete Co.* (1978), 91 Wash. 2d 230, 588 P.2d 1308. See also *Wisconsin Natural Gas Co. v. Ford, Bacon & Davis Construction Corp.* (1980), 96 Wis. 2d 314, 291 N.W.2d 825.

In adopting comparative negligence, this court eliminated the total bar to recovery which a plaintiff had faced under contributory negligence. In return for allowing a negligent plaintiff to recover, this court said fairness re-

quires that a plaintiff's damages be "reduced by the percentage of fault *attributable to him.*" (Emphasis added.) (*Alvis v. Ribar* (1981), 85 Ill. 2d 1, 25.) Were we to eliminate joint and several liability as the defendant advocates, the burden of the insolvent or immune defendant would fall on the plaintiff; in that circumstance, plaintiff's damages would be reduced beyond the percentage of fault *attributable to him.* We do not believe the doctrine of comparative negligence requires this further reduction. Nor do we believe this burden is the price plaintiffs must pay for being relieved of the contributory negligence bar. The *quid pro quo* is the reduction of plaintiff's damages. What was said in *American Motorcycle Association v. Superior Court* (1978), 20 Cal. 3d 578, 590, 578 P.2d 899, 906, 146 Cal. Rptr. 182, 189, is applicable here: "[F]airness dictates that the 'wronged party should not be deprived of his right to redress,' *** '[t]he wrongdoers should be left to work out between themselves any apportionment.' "

Further support for retaining joint and several liability is found in "An Act in relation to contribution among joint tortfeasors" (Act) (Ill. Rev. Stat. 1979, ch. 70, par. 301 *et seq.*). Although the instant case accrued prior to its effective date, the Act expresses the intent of our legislature concerning joint and several liability:

"Sec. 4. Rights of Plaintiff Unaffected. A plaintiff's right to recover the full amount of his judgment from any one or more defendants subject to liability in tort for the same injury to person or property, or for wrongful death, is not affected by the provisions of this Act." Ill. Rev. Stat. 1979, ch. 70, par. 304.

Moreover, under the Act, it is the defendant or defendants who must bear the burden of the insolvent or immune defendant:

"Sec. 3. Amount of Contribution. The pro rata share of each tortfeasor shall be determined in accordance with his relative culpability. However, no person shall be required to contribute to one seeking contribution an

amount greater than his pro rata share unless the obligation of one or more of the joint tortfeasors is uncollectible. In that event, the remaining tortfeasors shall share the unpaid portions of the uncollectible obligation in accordance with their pro rata liability.

If equity requires, the collective liability of some as a group shall constitute a single share." Ill. Rev. Stat. 1979, ch. 70, par. 303.

Defendant concedes that where the plaintiff is free from fault each defendant should still be held jointly and severally liable. It also admits in its reply brief that the Act leaves unaffected the common law doctrine of joint and several liability. Defendant points out, however, that it was subsequent to the enactment of the Act that this court adopted comparative negligence. Now, under *Alvis,* damages are allocated according to fault. As such, defendant argues, *Alvis* mandates that a tortfeasor should be liable only to the extent that his negligent acts or omissions produced the damages.

We find nothing in *Alvis* which mandates either a shift in who shall bear the risk of the insolvent defendant or the elimination of joint and several liability. Defendant has not cited nor have we found persuasive judicial authority for the proposition that comparative negligence compels the abolition of joint and several liability. On the contrary, most jurisdictions which have adopted comparative negligence have retained the doctrine. Therefore, we hold that our adoption of comparative negligence in *Alvis* does not change the long-standing doctrine of joint and several liability.

III

EQUAL PROTECTION

Initially, defendant notes that contribution in strict liability actions may be sought from joint tortfeasors only for causes of action arising out of occurrences on or after March 1, 1978 (Ill. Rev. Stat. 1979, ch. 70, par. 301; *Skin-*

*ner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 16-17). Here the accident occurred on January 24, 1978. As a result, defendant argues, it runs the risk of bearing not only its proportionate share of plaintiff's damages, but also the damages attributed to the fault of insolvent, immune, or unjoined tortfeasors. Defendant contends that judicial application of joint and several liability under these circumstances is an arbitrary and invidious discrimination against a class of tortfeasors in violation of the Federal and Illinois constitutional guarantees of equal protection of the laws (U.S. Const., amend. XIV, sec. 1; Ill. Const. 1970, art. I, sec. 2.) Defendant cites no case upholding its position.

Basically, defendant's argument is directed toward the prospective application of *Skinner*, wherein the court set forth a new rule of law in strict liability cases. Since the rule was not applied retroactively, so as to include the instant case, defendant reasons it was denied equal protection under the law. Based upon this premise, it argues joint and several liability should be abrogated in cases where comparative fault principles control. We find defendant's argument to be without merit.

Prospective application of a new doctrine or rule of law does not violate the equal protection of laws under either the Federal or Illinois constitution. (See *Great Northern Ry. Co. v. Sunburst Oil & Refining Co.* (1932), 287 U.S. 358, 364, 77 L. Ed. 360, 366, 53 S. Ct. 145, 148.) Moreover, *Skinner's* prospective rule was adopted to provide a more equitable apportionment of a plaintiff's losses among concurrent tortfeasors. In our opinion, the operation of this rule is neither arbitrary nor an invidious discrimination.

Further, we question defendant's standing to raise its constitutional objections in the instant case, where it seeks to apply the holding in *Skinner*. There, the court had before it a third-party complaint by the manufacturer against the employer setting forth a cause of action for contribu-

tion. Here, however, defendant has not filed a third-party complaint. Instead, by way of defense, it attempts to classify the employer as a joint tortfeasor and have the employer's negligence compared even though it was not joined as a party. In this manner, defendant attempts to circumvent the prospective rule established in *Skinner* which was codified in "An Act in relation to contribution among joint tortfeasors." This it cannot do. See *Buehler v. Whalen* (1977), 70 Ill. 2d 51, 63-64.

The doctrine of joint and several liability, like contribution, operates only where two or more persons are subject to liability in tort arising out of the same injury to a plaintiff. (See Ill. Rev. Stat. 1979, ch. 70, par. 302; *Paul Harris Furniture Co. v. Morse* (1956), 10 Ill. 2d 28, 43.) Such is not the case here, and the doctrine of joint and several liability has no application.

Therefore, in response to the questions posed, we conclude that (1) comparative fault is applicable to strict products liability actions; (2) comparative fault does not eliminate joint and several liability; and (3) retention of joint and several liability does not deny defendants equal protection of the laws.

The order of the circuit court striking the affirmative defenses is affirmed, and the cause is remanded to the circuit court of Peoria County with directions to allow defendant to amend his first defense so as to be consistent with the views expressed herein.

*Affirmed and remanded,*
*with directions.*