**U.S. HOME CORPORATION, Plaintiff,**

v.

**GEORGE W. KENNEDY CONSTRUC-
TION COMPANY, INC., et al.,
Defendants.**

No. 82 C 7775.

United States District Court,
N.D. Illinois, E.D.

Dec. 21, 1984.

Arthur DeBofsky, Mark D. DeBofsky, DeBofsky & DeBofsky, Ronald S. Fishman, Fishman & Fishman, Chicago, Ill., for defendant Kennedy.

Thomas M. Crisham, Edward M. Crane, Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

George W. Kennedy Construction Company, Inc. ("Kennedy") has moved to dismiss Count I of the recently-filed Cross-claim (the "Cross-claim") by Mackie Consultants, Inc. ("Mackie") and William Lorek ("Lorek") (collectively "Mackie-Lorek"), two of Kennedy's codefendants to the First Amended Complaint (the "Complaint") of U.S. Home Corporation ("U.S. Home").[1] For the reasons stated in this memorandum opinion and order, Kennedy's motion is granted.

### Facts

In light of the limited nature of the current motion, only a bare bones outline of the setting for the motion is required. This summary statement is drawn from U.S. Home's Complaint, of course with no implication of any findings as to the Complaint's accuracy.

U.S. Home, a real estate developer, suffered more than $450,000 in damages when the sanitary sewer installation for its major single-family residence development in Lindenhurst, Illinois proved defective and actually collapsed in part. Mackie had designed the system (its employee Lorek was the responsible professional engineer) and Kennedy had installed it, each under a separate contract with U.S. Home.

U.S. Home sues Kennedy on four theories:

1. for breach of contract (including Kennedy's nonconformity to Mackie's plans and specifications for the sewer system) (Complaint Count I);

2. for breach of warranty of workmanship (Complaint Count II);

3. for negligence (including Kennedy's (a) nonconformity to Mackie's plans and specifications and (b) faulty workmanship) (Complaint Count III); and

4. for another, much smaller and separate breach of contract claim (Complaint Count IV).

U.S. Home sues Mackie on two theories, the second of which charges Lorek as well:

1. for Mackie's breach of contract (including its provision of improper plans and specifications for the sewer system and its failures of consultation, technical assistance and supervision) (Complaint Count V); and

2. for Mackie-Lorek's professional negligence (in the same respects charged in Count V) (Complaint Count VI).

Mackie-Lorek's Cross-claim Count I asserts the familiar "active-passive" dichotomy as the predicate for Kennedy's claimed obligation of indemnity to Mackie-Lorek. Its Paragraph 8 says:

> In the alternative and without prejudice to their denials and other statements in their pleadings, these defendants contend that in the event they are found liable to the plaintiff, U.S. HOME CORPORATION, then and in such event their liability will be technical, minor or passive fault for their failure to detect installation and construction errors made by GEORGE W. KENNEDY CONSTRUCTION COMPANY and therefore they are entitled to indemnity with [sic] GEORGE W. KENNEDY CONSTRUCTION COMPANY, INC.

Paragraph 9 alleges the "active primary or major fault" was Kennedy's, attributable to its noncompliance with Mackie's plans and specifications. Accordingly Paragraph 10 asserts if Mackie-Lorek are found liable to U.S. Home, they will be entitled to 100% indemnification from Kennedy.

### Implied Indemnity in Illinois

At the outset it must be observed Mackie-Lorek do not accurately characterize all U.S. Home's claims. At least some of those claims are *totally* inconsistent with an active-passive distinction: for example,

---

1. In fact Kennedy has labeled its motion as one to dismiss the Cross-claim itself. Because the motion challenges only the viability of indemnity claims, while Cross-claim Count II sounds in contribution under the Illinois statute, Mackie-Lorek are clearly right in saying no challenge is made to Count II.

the claims that Mackie-Lorek began the chain of defective performance by generating faulty plans and specifications (Complaint Count V ¶ 17(a) and (b) and Count VI ¶ 18(a) and (b)). Others would appear to place Kennedy and Mackie-Lorek on a parity (or at least independently liable) in terms of fault. Thus even if Mackie-Lorek *could* sustain an implied indemnity claim, it would likely involve at least a complex factual determination to parse out the extent of indemnification. Indeed, given the fact that any claimed right of indemnity necessarily presupposes Mackie-Lorek's liability to U.S. Home on the facts pleaded in the Complaint, this Court's opinion in *Winfield Design Associates, Inc. v. Quincy Jefferson Venture*, 569 F.Supp. 748, 749 (N.D.Ill. 1983) (ironically called on by Mackie-Lorek in their own support) points up the dubiousness of *any* indemnity claim in this case.

But Mackie-Lorek fail to state a cause of action for more basic reasons. Within the past few months *Morizzo v. Laverdure*, 127 Ill.App.3d 767, 83 Ill.Dec. 46, 469 N.E.2d 653 (1st Dist.1984) has specifically held Illinois' common-law cause of action for active-passive indemnity has not survived passage of the Illinois Contribution Among Joint Tortfeasors Act (the "Act"), Ill.Rev.Stat. ch. 70, ¶¶ 301–305. Under *Erie v. Tompkins* principles this Court is bound to follow *Morizzo*.

It is true, as Mackie-Lorek Mem. 3 points out, that an earlier First Appellate District case had held the Act had not extinguished indemnity in Illinois. *Van Jacobs v. Parikh*, 97 Ill.App.3d 610, 52 Ill.Dec. 770, 422 N.E.2d 979 (1st Dist.1981). It is also true, as *Morizzo* itself pointed out, that post-*Van Jacobs* opinions [2] "have interpreted it as authority for the principle that implied indemnification in tort cases is still a viable concept" (*Morizzo*, 127 Ill.App.3d at 774, 83 Ill.Dec. at 51, 469 N.E.2d at 658). And because Lindenhurst is in the Second Appellate District, whose branch of the Appellate Court has not spoken to the issue, this Court would not be required to follow *Morizzo* slavishly because of what this Court has termed the *Thorpe-Garcia* doctrine. See *Commercial Discount Corp. v. King*, 552 F.Supp. 841, 848, 851 n. 8 (N.D.Ill. 1982).

In this case, though, *Morizzo* has not created a true conflict of authority. Instead it has *defined* the scope of *Van Jacobs* and the doctrine of implied indemnity (*Morizzo*, 127 Ill.App.3d at 774, 83 Ill.Dec. at 51, 469 N.E.2d at 658):

> However, none of [*Van Jacobs* or the later] cases addressed the question raised by the failure of the legislature to provide for the specific preservation of the right of express or implied indemnity. As we interpret *Van Jacobs*, this court held that implied indemnity is not extinguished by the passing of the Contribution Act for cases involving some pre-tort relationship between the parties which gives rise to a duty to indemnity, *e.g.*, in cases involving vicarious liability (lessor-lessee; employer-employee; owner and lessee; master and servant). In *Lowe* [*v. Norfolk and Western Ry. Co.*, 124 Ill. App.3d 80, 79 Ill.Dec. 238, 463 N.E.2d 792], this court held that implied indemnity was still viable with respect to "upstream" claims in a strict liability action. Except possibly for those causes of action based on the theories of indemnity just enumerated, it is our opinion that the Contribution Act extinguished a cause of action for active-passive indemnity in Illinois.

*That* opinion—not at war with but consistent with *Van Jacobs*—is controlling in *Erie v. Tompkins* terms. When *Winfield Design* was issued, this Court would have been duty-bound to follow the then-existing statement of Illinois law. It must do the same now, responsive to *Morizzo*'s current announcement of that law.[3]

---

**2.** One of those opinions is a purely arguendo assumption to that effect by this Court—by way of dictum—in *Winfield Design Associates, Inc. v. Quincy Jefferson Venture*, 569 F.Supp. at 748, 749 n. 4 (N.D.Ill.1983).

**3.** This is far from the first time this Court has echoed Professor William Winslow Crosskey's perception of the bizarre workings of *Erie v. Tompkins*—placing, as it does, federal courts in a less independent position than lower Illinois

In *Morizzo* terms, Mackie-Lorek and Kennedy do not stand in "some pre-tort relationship ... which gives rise to a duty to indemnify...." Their independent contracts with U.S. Home, based on which Kennedy was obligated to implement the designs thereafter produced by Mackie-Lorek, are not at all akin to the exemplified lessor-lessee, employer-employee, owner-lessee and master-servant relationships. *Morizzo* plainly requires dismissal of Cross-claim Count I.[4]

Mackie-Lorek Mem. 4 asks alternatively for deferral of this Court's ruling until the Illinois Supreme Court has had the opportunity to review *Morizzo*. There is of course no assurance of such review (see *Abbott Laboratories v. Granite State Insurance Co.*, 573 F.Supp. 193, 198 (N.D.Ill. 1983), describing a direct and wide-open conflict among all five Appellate Districts, which had then gone unresolved by the Supreme Court for more than four years despite ample opportunity for it to take one of the later cases—and to this Court's knowledge still remains unresolved more than a year later). It would be irresponsible for this Court to leave the parties here in suspense, awaiting a decision that might not come at all. If and when the Illinois Supreme Court were to act in the future, and were it then to disavow the *Morizzo* principle, it would be time enough for Mackie-Lorek to revive that part of their Cross-claim.

One final comment is in order, related to the observation at the beginning of this section. Both the Act and common-law indemnity are loss-shifting concepts applicable to tortfeasors. At least to the extent U.S. Home sues Mackie for breach of its *separate contract* with U.S. Home, a contract admittedly not subcontracted by

Mackie to Kennedy, neither the Act nor any notion of active-passive fault should come into play in any case.

*Conclusion*

Kennedy's motion is granted, and Cross-claim Count I is dismissed. Kennedy is ordered to answer Cross-claim Count II on or before January 2, 1985.

---

courts, quite at odds with the entire concept of the Supremacy Clause. See *National Can Corp. v. Whittaker Corp.*, 505 F.Supp. 147, 148–49 n. 2 (N.D.Ill.1981).

**4.** This Court is aware of a division of opinion among Illinois appellate judges (expressed informally and not in formal opinions) as to the soundness of the *Thorpe-Garcia* doctrine. Instead it has been suggested by some judges that

because the Illinois Constitution establishes only one Appellate Court, all Appellate District decisions throughout the state have equal standing with all trial courts throughout the state, with the *most recent* Appellate Court decision (wherever rendered) being binding upon all trial courts. Even if that alternative approach were taken, the end result here would be the same: adherance to *Morizzo*.