**U.S. HOME CORPORATION, Plaintiff,**

v.

**GEORGE W. KENNEDY CONSTRUCTION COMPANY, INC., et al., Defendants.**

**MACKIE CONSULTANTS, INC., et al., Third Party Plaintiffs,**

v.

**ARMCO, INC., Third Party Defendant.**

No. 82 C 7775.

United States District Court, N.D. Illinois.

Sept. 17, 1985.

Edward M. Crane, Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Chicago, Ill., for Mackie and Lorek.

Arthur Debofsky, Debofsky & Debofsky, and Ronald S. Fishman, Fishman & Fishman, Chicago, Ill., for Geo. W. Kennedy Const. Co., Inc.

David J. Gibbons, Edward L. Michael, Chadwell & Kayser, Ltd., Chicago, Ill., for Armco, Inc.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

This multiparty litigation was originally launched by U.S. Home Corporation ("U.S. Home"), whose First Amended Complaint (the "Complaint") runs against George W. Kennedy Construction Company, Inc. ("Kennedy"), Mackie Consultants, Inc. ("Mackie"), William Lorek ("Lorek") and American States Insurance Company ("American"). U.S. Home charges:

1. Kennedy and Mackie with breach of contract,

2. Kennedy with breach of express and implied warranties and

3. Kennedy, Mackie and Lorek with negligence,

all arising out of the construction of sanitary sewers that serve the single-family Waterford Woods residential development in Lindenhurst, Illinois. Kennedy and Mackie and Lorek have in turn filed two-count Third Party Complaints (the "Kennedy Complaint" and the "Mackie-Lorek Complaint") against Armco, Inc. ("Armco"),[1] seeking recovery via contribution and indemnity.

Armco now moves to dismiss each of the Kennedy Complaint and the Mackie-Lorek Complaint under Fed.R.Civ.P. ("Rule") 12(b)(6). For the reasons stated in this memorandum opinion and order, the motion is granted in principal part and denied in part.

### Facts [2]

U.S. Home, a real estate developer, suffered more than $450,000 in damages when the sanitary sewer installation for its major single-family residence development in Lindenhurst proved defective and actually collapsed in part. Mackie had designed the system (its employee Lorek was the responsible professional engineer) and Kennedy had installed it, each under a separate contract with U.S. Home. Armco truss pipe and other Armco-manufactured accessory components were used in construction of the system. No contractual arrangement existed between Armco and either Kennedy or Mackie-Lorek.

---

1. As the text later reflects, Armco was one of the co-defendants originally named by U.S. Home, but in November 1983 it was dismissed out of the litigation without prejudice on U.S. Home's motion. Its reintroduction via the Third Party Complaints came earlier this year.

2. Because of the narrow scope of the current motion, only a skeletal outline of its setting is called for. This summary and outline are drawn from U.S. Home's Complaint and the Third Party Complaints, of course with no implication of any findings for any party.

Kennedy, Mackie and Lorek contend any liability any of them might have to U.S. Home would be occasioned not by their own delinquency but rather by the defective conditions of the Armco products involved. That, they say, entitles each of them to contribution and indemnity. Armco retorts none of Kennedy, Mackie and Lorek states a cause of action for either such claim.

### Contribution

■ Section 302(a) of the Illinois Contribution Among Joint Tortfeasors Act (part of the "Act," Ill.Rev.Stat. ch. 70, §§ 301–305) provides:

> Except as otherwise provided in this Act, where 2 or more persons are subject to liability in tort arising out of the same injury to person or property, or the same wrongful death, there is a right of contribution among them, even though judgment has not been entered against any or all of them.

Thus the Act expressly requires *each* party to the contribution action to be "subject to liability in tort," and the sensible reading of that phrase connotes liability to the injured party—here U.S. Home. In those terms each of Kennedy, Mackie and Lorek has a viable contribution claim only as to a portion of U.S. Home's potential sources of recovery.

### 1. Kennedy's and Mackie's Potential Contract Liability to U.S. Home

■ Armco is quite right in urging no contribution would lie if Kennedy's or Mackie's liability to U.S. Home were established on a breach of contract theory. Even were Armco then determined to be a tortfeasor as to U.S. Home, no contribution would be available to Kennedy or Mackie because the requisite "2 or more persons ... subject to liability in tort" would be lacking. *Intamin, Inc. v. Figley-Wright Contractors, Inc.*, 605 F.Supp. 707, 709–10 (N.D.Ill.1985).

Both Kennedy and Mackie purport to find shelter against that fatal conclusion in *Maxfield v. Simmons*, 96 Ill.2d 81, 70 Ill. Dec. 236, 449 N.E.2d 110 (1983). But *Maxfield* distinguished carefully between claims sounding in contract and those sounding in tort, holding that only the latter would trigger rights of contribution or indemnification. Indeed, the very portion of the *Maxfield* opinion quoted at Kennedy Mem. 3 makes plain the only predicate for contribution there was that (adapting the quotation to this case) "the liability, if any, imposed on [Kennedy or Mackie] will be the result not of breach of contract, but of tortious conduct" (*id.* at 87, 70 Ill.Dec. at 238, 449 N.E.2d at 112).

In sum, contribution on any U.S. Home contract-breach recovery is simply unavailable. This opinion turns then to the same question in the tort arena.

### 2. Kennedy's, Mackie's and Lorek's Potential Tort Liability to U.S. Home

■ None of the litigants has dealt properly with the tort-contribution subject. Because the Act treats with the topic so plainly (though that could not be guessed from the parties' memoranda), no extended discussion is required.

Armco really glosses over (or ignores entirely) the negligence theories advanced by U.S. Home against the third-party plaintiffs, as referred to in the two Third Party Complaints. To the extent U.S. Home is successful against any of Kennedy, Mackie and Lorek on such negligence grounds[3] and Armco is also found negligent or strictly liable[4] as to U.S. Home, the "2 or more persons ... subject to liability in tort" would be present. And that of course is all the Act requires for contribution from Armco.

---

**3.** Nothing in this opinion should be understood as expressing any views as to the viability of any such claim.

**4.** As to contribution under the Act among joint tortfeasors, one of whom is subject to strict products liability, see *Coney v. J.L.G. Industries, Inc.*, 97 Ill.2d 104, 123–24, 73 Ill.Dec. 337, 346, 454 N.E.2d 197, 206 (1983).

ble party free of liability while a lesser wrongdoer bore the entire cost of plaintiff's injuries. As to Illinois' adoption of the indemnity concept in the area of strict products liability, see *Suvada v. White Motor Co.*, 32 Ill.2d 612, 624, 210 N.E.2d 182, 188–89 (1965). And as to the identical rationale for the judicial creation of the active-passive negligence theory of indemnity, see *Skinner v. Reed-Prentice Division Package Machinery Co.*, 70 Ill.2d 1, 12–13, 15 Ill.Dec. 829, 833, 374 N.E.2d 437, 441 (1970).

But each of the third-party plaintiffs is equally guilty of glossing over the relevant provision of the Act.[5] As already indicated, what "subject to liability in tort" means is liability *to the original plaintiff* (here U.S. Home), not liability of the third-party disputants inter sese. *Intamin*, 605 F.Supp. at 710.

Yet Kennedy's Complaint sets out a contribution claim full of irrelevant allegations as to Armco's duty to others than U.S. Home (Count I ¶ 5):

> That Armco, Inc. had a duty to Kennedy, Mackie Consultants, Inc. and William F. Lorek and U.S. Home to exercise due care in the design, manufacture and marketing of Armco truss pipe.

And Kennedy's Count I ¶ 4 asserts various potential strict liability or negligence breaches by Armco, without identifying how any of those violated a duty owed to U.S. Home. Even worse, the Mackie-Lorek Complaint may be searched in vain for any hint of how Armco's asserted misconduct impinged on a duty running from it to U.S. Home.

Despite those flaws in the third-party complaints, the fact remains Armco *may* be subject to contribution claims for the reason stated at the outset of this section. Consequently it seems most efficient[6] to deny Armco's motion to dismiss on condition each of the Third Party Complaints is amended on or before September 30, 1985 to conform to this opinion.

### Indemnity

As contrasted with contribution and its risk-sharing approach, indemnity is an all-or-nothing concept. Implied (that is, not expressly contractual) indemnity was originally a product of, and largely a judicial response to, the era when the rule against contribution among joint tortfeasors—coupled with a plaintiff's absolute choice of whom to sue—sometimes left a more culpa-

In this case U.S. Home had originally joined Armco as a defendant on strict liability grounds. After this Court had upheld that cause of action (solely in pleading terms) against Armco's Rule 12(b)(6) attack, 565 F.Supp. 67 (N.D.Ill.1983), U.S. Home nonetheless dismissed out Armco. Now the third-party plaintiffs, urging Armco was the real culprit because of its defective product, seek to shift all their potential liability to Armco.

■ But it should be obvious from the very origins of implied indemnity that passage of the Act, which removed a good part of the policy underpinnings from the indemnity doctrine, would work some dramatic changes in indemnity as well as contribution. And that has in fact taken place. Earlier this year this Court rejected the Mackie-Lorek cross-claim for indemnity against Kennedy because post-Act case law (most importantly *Morizzo v. Laverdure*, 127 Ill.App.3d 767, 83 Ill.Dec. 46, 469 N.E.2d 653 (1st Dist.1984)) "has specifically held Illinois' common-law cause of action for active-passive indemnity has not survived passage of the ... Act." *U.S. Home Corp. v. George W. Kennedy Construction Co.*, 601 F.Supp. 84, 86 (N.D.Ill.1985).

In an important sense the Kennedy and Mackie-Lorek claims against Armco are, on the third-party plaintiffs' own char-

---

**5.** It is somewhat extraordinary that not one of the four memoranda filed on the current motion sets out the relevant text of Act § 302(a), brief as it is. Nor (as the text of this opinion reflects) do the memoranda give a strong clue that any of the counsel has troubled to read that provision.

**6.** This lawsuit is, after all, approaching its third anniversary.

acterizations of those claims, of that same active-passive type. And to that extent the logic of this Court's earlier opinion bars such claims. However, the third-party claimants also urge Armco's vulnerability in strict liability terms renders it liable in indemnity to them for any exposure they may have to both (1) U.S. Home's breach of contract and breach of warranty claims and (2) U.S. Home's negligence claims.

■ As to contract-type claims (including warranty claims), that is simply wrong. It is based on a flat-out misreading of *Maxfield,* which—after speaking of indemnification (as well as contribution) as being triggered by tortious conduct on the part of the third-party defendants—said, again adapting the quotation to this case (96 Ill.2d at 87, 70 Ill.Dec. at 238, 449 N.E.2d at 112):

> The implied contract of indemnity arose from the contractual relationship between the parties, but the liability, if any, imposed on [Kennedy or Mackie] will be the result not of breach of contract, but of tortious conduct.

And see the discussion of *Maxfield* in *Chicago College of Osteopathic Medicine v. George A. Fuller Co.,* 719 F.2d 1335, 1341 (7th Cir.1983). To that extent too, then, the indemnity claims fail.

That leaves only potential indemnification for U.S. Home's tort-based claims. On that front Mackie-Lorek seek to urge the active-passive characterization in *Morizzo* does not apply to a strict liability claim, because the latter concept was developed to avoid the need to measure levels of fault. But that argument misses the real sense of the "active-passive" dichotomy, which simply reflected the idea that (in an era of all-or-nothing rather than shared liability) it was more fair for the principal wrongdoer to bear the total liability than a lesser tortfeasor. And of course the same idea had supported the shifting of total liability from the installer (say) of a dangerous product to its producer, when some third party was injured by the product and sought to recover under strict liability. In both instances the shifting of liability had

to take the form of indemnity, simply because the law had developed no technique for divided liability.

■ Today, with a contribution regime in place, the rationale for any kind of full shifting of responsibility (under any label) has lost much of its force. And so it is that *Morizzo,* 127 Ill.App.3d at 774, 83 Ill.Dec. at 51, 469 N.E.2d at 658 teaches that, absent an express contract for indemnification (and none is involved here), implied indemnification is not even arguably viable after passage of the Act except perhaps in two situations:

> However, none of these [post-Act] cases [including *Van Jacobs v. Parikh,* 97 Ill. App.3d 610, 52 Ill.Dec. 770, 422 N.E.2d 979 (1st Dist.1981) and *Lowe v. Norfolk & Western Railway Co.,* 124 Ill.App.3d 80, 79 Ill.Dec. 238, 463 N.E.2d 792 (5th Dist.1984) ] addressed the question raised by the failure of the legislature to provide for the specific preservation of the right of express or implied indemnity. As we interpret *Van Jacobs,* this court held that implied indemnity is not extinguished by the passing of the Contribution Act for cases involving some pre-tort relationship between the parties which gives rise to a duty to indemnify, *e.g.,* in cases involving vicarious liability (lessor-lessee; employer-employee; owner and lessee; master and servant). In *Lowe,* this court held that implied indemnity was still viable with respect to "upstream" claims in a strict liability action. Except possibly for those causes of action based on the theories of indemnity just enumerated, it is our opinion that the Contribution Act extinguished a cause of action for active-passive indemnity in Illinois.

*Morizzo*'s reference in that quotation to "active-passive indemnity" is no more than a characterization of the basic concept of indemnification, under which it is thought the substantial difference in degrees of fault means the indemnitee should be wholly freed from liability and the indemnitor should be saddled with the entire liability instead. There is no more and no less

reason to apply that all-or-nothing concept in the greater-and-lesser fault situation of the manufacturer and installer of a strict-liability-type product than there is in the active-passive fault situation. *Morizzo*'s lesson as to the latter type of indemnity is equally applicable to the former.

For the reason stated in its earlier opinion (601 F.Supp. at 86), then, this Court follows *Morizzo*. Surely no pre-tort relationship of the type identified by *Morizzo* exists here—U.S. Home's claims assert direct and not vicarious liability. As for "upstream" claims in strict liability actions, as referred to in *Lowe* and mentioned in *Morizzo*, any potential for such indemnification in this case would depend on *two* things:

> 1. Kennedy's or Mackie-Lorek's liability to U.S. Home on strict liability grounds for incorporation of the defective Armco products into the sewer installation.
>
> 2. Imposition of that same liability "upstream" from Kennedy, Mackie or Lorek to Armco.

There is some question whether U.S. Home's tort claims against Kennedy or Mackie or Lorek fit the first requirement. For analytical purposes, however, this opinion will assume that some—though certainly not all—the allegations of breaches of duty to U.S. Home can be argued to do so:

> 1. As to Kennedy, Count III ¶ 23 alleges Kennedy "failed to produce completed construction was workmanlike and acceptable in every detail; and failed to fulfill the minimum standards of performance and workmanship for sewer installations in Illinois."
>
> 2. As to Mackie and Lorek, Count VI ¶ 18 is more problematical, but some of its allegations (perhaps subparagraphs (a), (b) and (g)) might arguably meet the description of a strict liability claim.

So each Third Party Complaint for indemnity might partly pass scrutiny at the first step.

But Kennedy, Mackie and Lorek founder on the second requirement in any case. *Chicago College*, 719 F.2d at 1341–42 parsed the Illinois case law as of late 1983, emphasizing that potentially conflicting cases (including *Maxfield*) were reconcilable on the ground that the right to indemnification must stem from a *contractual* relationship (*id.* at 1342, emphasis added):

> As we interpret these cases, we hold that Illinois law as it now stands does allow a third party action for indemnity *where the third party plaintiff and the third party defendant were contracting parties* and the third party plaintiff bears no independent fault in the harm to the original plaintiff.

That analysis tracks with the Illinois case law since then, for it accounts not only for *Maxfield* and *Lowe* (decided before *Chicago College*, though the *Lowe* case was not specifically referred to by our Court of Appeals) but also for *Anixter Bros., Inc. v. Central Steel & Wire Co.*, 123 Ill.App.3d 947, 952–53, 79 Ill.Dec. 359, 363, 463 N.E.2d 913, 917 (1st Dist.1984). Each of those Illinois cases upheld "upstream" indemnity actions where, in the language of *Chicago College*, "the third party plaintiff and the third party defendant were contracting parties."

In this case, *none* of Kennedy, Mackie and Lorek had a contractual relationship with Armco, and under the *Chicago College* analysis that is fatal to their implied indemnity claims. Mackie and Lorek ask this Court to disavow *Chicago College* and its reading of Illinois law. This Court is not about to do so.

It follows that none of the possible bases for indemnification—for the *full* shifting of liability to Armco—exists. Armco's motion to dismiss the indemnity-seeking portions of the Kennedy Complaint and the Mackie-Lorek Complaint is granted.[7]

---

7. It may be noted parenthetically that this analysis has given Kennedy and Mackie-Lorek the benefit of the doubt as to current Illinois implied indemnity doctrine. Earlier this year *Holmes v. Sahara Coal Co.*, 131 Ill.App.3d 666, 676, 86 Ill.Dec. 816, 822–23, 475 N.E.2d 1383, 1389–90 (5th Dist.1985) surveyed the field (including extensive law review discussion) and

*Conclusion*

Armco's motion is granted in part and denied in part, each to the extent stated in this opinion. Though the Third Party Complaints have thus survived Armco's current motion, that has been a limited survival. All parties should be mindful of the need, as and when the time for final pretrial order documents arrives in preparation for trial, to prepare suitable special verdict forms (Rule 49(a)) or special interrogatories (Rule 49(b)) to permit ascertainment of whether the jury's determinations do or do not bring contribution into play.

concluded in a split decision "that the Contribution Act has extinguished all actions for implied indemnity...." *Holmes* obviously felt free to resolve that issue for itself in view of the Illinois Supreme Court's 1984 declinations of an invitation to do so, awaiting further development in the Appellate Courts. *Heinrich v. Peabody International Corp.*, 99 Ill.2d 344, 350–51, 76 Ill.Dec. 800, 803–04, 459 N.E.2d 935, 938–39 (1984); *Simmons v. Union Electric Co.*, 104 Ill.2d 444, 453, 85 Ill.Dec. 347, 351, 473 N.E.2d 946, 950 (1984). Though *Holmes* has been questioned even within the Fifth Appellate District (see *Allison v. Shell Oil Co.*, 133 Ill.App.3d 607, 609–11, 612, 88 Ill.Dec. 720, 722–23, 724, 479 N.E.2d 333, 335–36, 337 (5th Dist.1985), which follows the *Morizzo* analysis), if it were to provide the rule of decision here, the discussion of the indemnity claims in this case would have been reduced to a single sentence rejecting them.