EILEEN HEINRICH, Special Adm'r of the Estate of Frank Heinrich, Deceased, Plaintiff, v. PEABODY INTERNATIONAL CORPORATION *et al.*, Defendant (San-Dee Building Maintenance Company, Third-Party Plaintiff-Appellant, v. Brookshore Lithographers, Inc., Third-Party Defendant-Appellee).

First District (5th Division)   No. 81—1770

Opinion filed December 13, 1985.

Wildman, Harrold, Allen & Dixon, of Chicago (Howard T. Brinton, Craig M. White, and Thomas E. Patterson, of counsel), for appellant.

Sweeney & Riman, Ltd., of Chicago (Georgene M. Wilson, of counsel), for appellee.

JUSTICE LORENZ delivered the opinion of the court:

The Illinois Supreme Court remanded this cause for further consideration. San-Dee Building Maintenance Company (San-Dee) appeals from the dismissal of its claim for indemnity against Brookshore Lithographers, Inc. (Brookshore). In an unpublished opinion, we found that we lacked jurisdiction, but the supreme court reversed (*Heinrich v. Peabody International Corp.* (1984), 99 Ill. 2d 344, 459 N.E.2d 935) and remanded with instructions to decide:

1. Whether implied indemnity exists in Illinois in view of the Contribution Among Joint Tortfeasors Act (the Contribution Act) (Ill. Rev. Stat. 1979, ch. 70, pars. 301 through 305)?

2. Whether San-Dee's third-party complaint states a cause of action for implied indemnity?

3. Whether the allegation that San-Dee loaned its servant to Brookshore states a cause of action apart from the label of indemnity?

The underlying action is a wrongful death suit. On December 11, 1979, Frank Heinrich was working on a trash compactor at Brookshore's plant, when Ignacio Ayala activated the compactor, decapitating Heinrich. Plaintiff alleged that San-Dee employed Ayala and that the two were negligent. San-Dee denied negligence and filed a third-party complaint against Brookshore seeking contribution and indemnity. With respect to indemnity, San-Dee alleged that Ayala was controlled and directed by Brookshore, and that Ayala was loaned with his consent to Brookshore. Brookshore moved to dismiss the indemnity count. The trial court granted the motion, ruling that indemnity was replaced by contribution under the Contribution Act. We have

jurisdiction by virtue of the supreme court's remand. *Heinrich v. Peabody International Corp.* (1984), 99 Ill. 2d 344, 459 N.E.2d 935.

Contribution and indemnity are distinct legal concepts: the elements of the actions differ as well as the measure of recovery. Contribution requires only that two or more parties share responsibility for an injury to plaintiff, and it proceeds from the theory that each party should contribute to the payment of the judgment in proportion to his or her responsibility. Indemnity, on the other hand, shifts the entire burden of the judgment to one party. Indemnity may be express, based on contract, or implied, based on a pretort relationship and a qualitative distinction in the culpable conduct of the defendants. (See generally, *Heinrich v. Peabody International Corp.* (1984), 99 Ill. 2d 344, 348-49, 459 N.E.2d 935; Prosser, Torts secs. 50, 51 (4th ed. 1971).) The theory underlying implied indemnity is that "the law will *** place the ultimate liability upon him whose fault was the primary cause of the injury." *John Griffiths & Son Co. v. National Fireproofing Co.* (1923), 310 Ill. 331, 339, 141 N.E. 739, quoted in *Simmons v. Union Electric Co.* (1984), 104 Ill. 2d 444, 454, 473 N.E.2d 946.

A proper resolution of the issues before us requires an examination of the manner in which these distinct concepts have become historically and functionally intertwined. Lord Kenyon announced a rule against contribution among joint tortfeasors in *Merryweather v. Nixan* (K.B. 1799), 8 T.R. 186, 101 Eng. Rep. 1337, suggesting that judicial resources ought not be expended to assist one wrongdoer as against another. At that time, "tort" connoted intentional or wilful misconduct, and rigid procedure allowed defendants to be joined only when they acted "in concert." (See Prosser, Torts sec. 50, at 305 (4th ed. 1971); Reath, *Contribution Between Persons Jointly Charged for Negligence—Merryweather v. Nixan*, 12 Harv. L. Rev. 176, 178 (1898).) As the meaning of "torts" broadened to include negligence and strict liability, and as the rules of procedure were liberalized to permit joinder of independent actors, the great majority of courts in this country applied the doctrine uncritically, and the American common law came to be seen as prohibiting contribution among tortfeasors in all cases. See *Northwest Airlines, Inc. v. Transport Workers Union of America* (1981), 451 U.S. 77, 86-87, 67 L. Ed. 2d 750, 760, 101 S. Ct. 1571, 1578; Prosser, Torts sec. 50, at 306 (4th ed. 1971).

The injustice of the rule against contribution did not escape all scrutiny, however. Scholars pointed out that the rule enabled a plaintiff to choose arbitrarily, maliciously, or even collusively which

defendant would be required to pay the judgment, while other culpable defendants escaped payment entirely. Aside from the obvious unfairness of one defendant bearing the burden of others' fault, scholars suggested that the rule undercut important social policies. Defendants who could escape payment despite their liability would have less incentive to avoid injurious conduct, and less incentive to settle lawsuits. See Leflar, *Contribution & Indemnity Between Tortfeasors,* 81 U. Pa. L. Rev. 130 (1932) (hereinafter Leflar, 81 U. Pa. L. Rev. 130), and sources cited therein.

Eventually, courts recognized the harshness of the rule and sought to ameliorate its effects by expanding concepts of implied indemnity. Implied indemnity initially required a pretort relationship and a qualitative distinction in the conduct of the parties, but the doctrine increasingly focused on qualitative distinctions, also termed primary-secondary liability or active-passive negligence. (See Leflar, 81 U. Pa. L. Rev. 130.) Flaws in implied indemnity were detected early, Professor Leflar commenting:

> "The distinction between misfeasance and nonfeasance may furnish a fairly good description of the cases, or of some of them, and it is not to be denied that it is a fundamental sort of distinction which is at the bottom of a great deal of the common law of torts. But it is not a clear distinction; misfeasance and nonfeasance shade into each other, and in many cases a given set of facts can with a little ingenuity be described as either the one or the other, at the describer's will."
> Leflar, 81 U. Pa. L. Rev. 130, 155-56.

Enlightened courts and legislatures rejected the rule against contribution. By 1932, over one-fourth of the States had abrogated the no-contribution rule: in 1955, about one-half had adopted some form of contribution. Today, only a handful of jurisdictions prohibit contribution among tortfeasors. See generally Kutner, *Bibliography: Contribution Among Tortfeasors,* 3 Rev. Litigation 297 (1983); Commissioners' Prefatory Note, Uniform Contribution Among Tortfeasors Act (1955 rev.), 12 Uniform Laws Annotated 34, 59-60 (1975); Leflar, 81 U. Pa. L. Rev. 130.

Illinois adopted the no-contribution rule in *Nelson v. Cook* (1856), 17 Ill. 443, 449, and extended it to negligent tortfeasors in *Consolidated Ice Machine Co. v. Keifer* (1890), 134 Ill. 481, 493, 25 N.E. 799. For many years, our supreme court adhered to the rule in the face of criticism, partly because the court preferred a legislative solution and partly because an alternative remedy, implied indemnity, was available. (See, *e.g., Carver v. Grossman* (1973), 55 Ill. 2d 507, 510-

11, 305 N.E.2d 161.) It is fair to say that in Illinois, the doctrine of implied indemnity developed hand-in-hand with the rule against contribution. See *Muhlbauer v. Kruzel* (1968), 39 Ill. 2d 226, 230, 234 N.E.2d 790; *John Griffiths & Son Co. v. National Fireproofing Co.* (1923), 310 Ill. 331, 337-40, 141 N.E. 739; *Nelson v. Cook* (1856), 17 Ill. 443, 449; *Sargent v. Interstate Bakeries, Inc.* (1967), 86 Ill. App. 2d 187, 229 N.E.2d 769; *Reynolds v. Illinois Bell Telephone Co.* (1964), 51 Ill. App. 2d 334, 201 N.E.2d 322; *Gulf, Mobile & Ohio R.R. Co. v. Arthur Dixon Transfer Co.* (1951), 343 Ill. App. 148, 98 N.E.2d 783.

The doctrinal interplay between noncontribution and implied indemnity shaped criticism of the rule in this State. An advisory council composed of Illinois judges overwhelmingly recommended the adoption of contribution based on relative responsibility. (See *Study Committee Report on Indemnity, Third Party Actions & Equitable Contributions*, 1976 Report of the Illinois Judicial Conference 198 (hereinafter 1976 Report of the Illinois Judicial Conference 198).) A key consideration in the judges' rejection of the rule against contribution was that "indemnity, an all or nothing remedy, is also inequitable, in that it too compels one tortfeasor alone to shoulder the loss caused by several." (1976 Report of the Illinois Judicial Conference 198, 200.) The Committee found that the rule prohibiting contribution "resulted in a great deal of judicial effort in expanding the concept of indemnity creatively in order to avoid the harsh result inherent in the rule," and "caused confusion and uncertainty regarding the law." (1976 Report of the Illinois Judicial Conference 198, 216.) Further, because a defendant could enter into a loan agreement with plaintiff requiring plaintiff to collect the judgment from another defendant, the Committee concluded that continued reliance on indemnity "presents great potential for fraud and collusion among the parties." 1976 Report of the Illinois Judicial Conference 198, 216.

Similarly, Judge Nicholas Bua, arguing persuasively in favor of contribution among tortfeasors, exposed a variety of problems in the application of implied indemnity. (Bua, *Third Party Practice in Illinois: Express & Implied Indemnity*, 25 De Paul L. Rev. 287 (1976) (hereinafter Bua, 25 De Paul L. Rev. 287).) Judge Bua considered the supreme court's opinion in *Muhlbauer v. Kruzel* (1968), 39 Ill. 2d 226, 234 N.E.2d 790, often cited for the proposition that a cause of action for implied indemnity requires a pretort relationship between indemnitor and indemnitee as well as a qualitative distinction in the conduct of the parties. (See Bua, 25 De Paul L. Rev. 287, 297-300.) Judge Bua suggested that the opinion's internal inconsistencies ren-

dered its holding doubtful, but more important for our purposes, he examined the requirements of implied indemnity as they were applied in practice. He pointed out that decisions subsequent to *Muhlbauer* applied the pretort relationship requirement in a haphazard manner (compare *Village of Lombard v. Jacobs* (1972), 2 Ill. App. 3d 826, 277 N.E.2d 758, with *Mullins v. Crystal Lake Park District* (1970), 129 Ill. App. 2d 228, 262 N.E.2d 622), and concluded that the requirement was "very nebulous." (Bua, 25 De Paul L. Rev. 287, 300. See also *Parr v. Great Lakes Express Co.* (7th Cir. 1973), 484 F.2d 767.) The judge carefully analyzed cases for qualitative distinctions in the conduct of the parties, and concluded:

> "All attempted definitions of active-passive negligence break down in application, because they are being applied to situations where an indemnity concept is improper. *** The situations where indemnity is granted are inconsistent and unpredictable. Inequity results where relief is denied and where relief is afforded, since the proper relief for two parties who are both guilty of some type of negligence would be to prorate the damages in proportion to culpability." Bua, 25 De Paul L. Rev. 287, 314.

Our supreme court declared contribution among tortfeasors to be the law in Illinois in *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 374 N.E.2d 437, cert. denied sub nom. *Hinckley Plastic, Inc. v. Reed-Prentice Division Package Machinery Co.* (1978), 436 U.S. 946, 56 L. Ed. 2d 787, 98 S. Ct. 2849. In *Skinner*, plaintiff was injured at work while using a machine manufactured by defendant Reed-Prentice. The manufacturer filed a third-party complaint seeking contribution from plaintiff's employer, Hinckley Plastic. The trial court dismissed the third-party complaint and this court affirmed, noting that the authority to adopt contribution resided in the legislature and the supreme court. *Skinner v. Reed-Prentice Division Package Machinery Co.* (1976), 40 Ill. App. 3d 99, 104, 351 N.E.2d 405, *rev'd* (1977), 70 Ill. 2d 1, 374 N.E.2d 437.

The supreme court detailed the history of implied indemnity as well as the rule against contribution, recognizing that the former had been used to mitigate the harsh effects of the latter. (*Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 11-12, 374 N.E.2d 437.) The *Skinner* court noted that both doctrines led to unjust results, and that the only justification for this injustice was the objection to the use of the courts for relief of wrongdoers. The court found, however, that the bar to contribution merely di-

verted the courts' time and energy to the search for qualitative distinctions in the conduct of the parties. (70 Ill. 2d 1, 12-13, 374 N.E.2d 437.) The *Skinner* court abolished the no-contribution rule. (70 Ill. 2d 1, 13, 374 N.E.2d 437.) The court found no inherent difficulty in comparing the liability of the employer, based on fault, and the strict liability of the manufacturer, based on policy rather than culpable conduct. The court held that the manufacturer stated a cause of action for contribution, explaining that "on these facts the governing equitable principles require that ultimate liability for plaintiff's injuries be apportioned on the basis of the relative degree to which the defective product and the employer's conduct proximately caused them." 70 Ill. 2d 1, 14, 374 N.E.2d 437.

Significantly, our supreme court handed down opinions in two cases along with *Skinner, Stevens v. Silver Manufacturing Co.* (977), 70 Ill. 2d 41, 374 N.E.2d 455, and *Robinson v. International Harvester Co.* (1977), 70 Ill. 2d 47, 374 N.E.2d 458, which arguably bear upon the main issue in this case, whether implied indemnity has been replaced by contribution in Illinois. *Stevens* and *Robinson* involved manufacturers' third-party complaints against the employers of the plaintiffs. In *Stevens*, the manufacturer's third-party claim sought contribution and indemnity; in *Robinson*, the manufacturer sought indemnity only. The supreme court held that these third-party complaints stated causes of action for contribution, notwithstanding their requests for indemnity. (*Stevens v. Silver Manufacturing Co.* (1977), 70 Ill. 2d 41, 44-45, 374 N.E.2d 455; *Robinson v. International Harvester Co.* (1977), 70 Ill. 2d 47, 50, 374 N.E.2d 458.) It is possible to interpret *Stevens* and *Robinson* as choosing contribution over implied indemnity. (See, *e.g., Van Slambrouck v. Economy Baler Co.* (1983), 120 Ill. App. 3d 843, 846, 458 N.E.2d 1096, *aff'd* (1985), 105 Ill. 2d 462, 475 N.E.2d 867.) More recently, however, our supreme court commented that the issue "awaits resolution" (*Heinrich v. Peabody International Corp.* (1984), 99 Ill. 2d 344, 350, 459 N.E.2d 935 (law of the case)), and so we do not consider this analysis of *Stevens* and *Robinson* to be dispositive.

Soon after *Skinner*, the General Assembly adopted the contribution Act (Ill. Rev. Stat. 1979, ch. 70, pars. 301 through 305). Beyond a legislative intent to codify *Skinner* and to fill "gaps" left open by the judicial recognition of contribution, little may be gleaned from the debates in the legislature. (See 81st Ill. Gen. Assem., Transcript of Senate Proceedings, May 14, 1979, at 173-76; 81st Gen. Assem., Transcript of House Proceedings, June 14, 1979, at 17-23.) Based on the language of the statute and its codification of principles enunci-

ated in *Skinner*, courts have determined that the two major purposes of the Contribution Act are the equitable sharing of damages, and the encouragement of settlement. See *Rakowski v. Lucente* (1984), 104 Ill. 2d 317, 472 N.E.2d 791; *Doyle v. Rhodes* (1984), 101 Ill. 2d 1, 461 N.E.2d 382; *Lowe v. Norfolk & Western Ry. Co.* (1984), 124 Ill. App. 3d 80, 94, 463 N.E.2d 792.

■■ We believe that the effect of the Contribution Act was to eliminate the doctrine of implied indemnity. We so hold for two reasons. First, contribution is a full and fair remedy among all parties arguably liable for injuries to plaintiffs. Second, the purposes of contribution would be defeated if courts continued to recognize implied indemnity.

Section 2 of the Contribution Act provides, *inter alia*, that "where [two] or more persons are subject to liability in tort arising out of the same injury to person or property, or the same wrongful death, there is a right of contribution among them" and that "[n]o tortfeasor is liable to make contribution beyond his own pro rata share of common liability." (Ill. Rev. Stat. 1979, ch. 70, par. 302(a) and (b).) Section 3 of the Act provides in part that "[t]he pro rata share of each tortfeasor shall be determined in accordance with his relative culpability." (Ill. Rev. Stat. 1979, ch. 70, par. 303.) Our supreme court has held that this equitable concept of relative responsibility applies regardless of the basis for a particular party's liability. (See *Doyle v. Rhodes* (1984), 101 Ill. 2d 1, 14, 461 N.E.2d 382.) The clear meaning of the statutory language is that each party's share of damages should be determined by the jury, or by the judge if there is no jury, based on the facts of the case. Whether the jury finds a party 1% responsible, 100% responsible, or any figure in between, that party should be bound by the jury's verdict.

The Contribution Act has established relative responsibility as the public policy of Illinois. In a complex and interdependent economy such as ours, it is increasingly likely that two or more separate persons or entities will be partly, but not completely responsible for a particular injury. (Widland, *Contribution: The End to Active-Passive Indemnity*, 69 Ill. Bar. J. 78, 80 (1980).) Contribution is an efficient and effective remedy among tortfeasors; it is capable of shifting responsibility entirely to one party if the facts so indicate, and it is capable of apportioning responsibility in response to far more subtle factual situations. Given the flexibility and fairness of contribution and the history of implied indemnity, we believe that the question is not: Why should implied indemnity be abolished? The question is rather: Why should implied indemnity be preserved?

We believe that there is ample reason to abolish the doctrine of implied indemnity in that continued recognition of the doctrine will subvert the purposes of contribution. Although contribution and implied indemnity are separate causes of action, we note that both doctrines impose duties which are quasicontractual in nature. (See Leflar, 81 U. Pa. L. Rev. 130.) In our view, a duty to share damages in proportion to responsibility is fundamentally inconsistent with the all-or-nothing shifting of damages from one admittedly liable party to another. The United States Supreme Court has noted:

> "Recognition of the right [of contribution] reflects the view that when two or more persons share responsibility for a wrong, it is inequitable to require one to pay the entire cost of reparation, and it is sound policy to deter all wrongdoers by reducing the likelihood that any will entirely escape liability." (*Northwest Airlines, Inc. v. Transport Workers Union of America* (1981), 451 U.S. 77, 88, 67 L. Ed. 2d 750, 761, 101 S. Ct. 1571, 1579.)

Where the parties have not expressly contracted for indemnity, the public policy of Illinois requires that their relationship should be governed by the principle of contribution.

Our objection to implied indemnity is not merely theoretical. The Illinois Supreme Court found that the long search for qualitative distinctions in conduct led to a great waste of judicial resources and to unjust results. (*Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 12-13, 374 N.E.2d 437, *cert. denied sub. nom. Hinckley Plastic, Inc. v. Reed-Prentice Division Package Machinery Co.* (1978), 436 U.S. 946, 56 L. Ed. 2d 787, 98 S. Ct. 2849.) Similarly, the inability to define the pretort relationship requirement in any meaningful or consistent way has been soundly criticized. (See Bua, 25 De Paul L. Rev. 287, 296-300.) If implied indemnity and contribution coexist, we must again engage in the academic exercise of searching for pretort relationships and qualitative distinctions, but now we must also search for the fine line between cases amenable to contribution and those indicating implied indemnity. As a practical matter, too, it would be difficult to instruct juries simultaneously in theories of contribution and implied indemnity. See Widland, *Contribution: The End to Active-Passive Indemnity*, 69 Ill. Bar J. 78, 80 (1980). See also *Allison v. Shell Oil Co.* (1985), 133 Ill. App. 3d 607, 611-12, 479 N.E.2d 333.

Moreover, the coexistence of contribution and implied indemnity as remedies among tortfeasors would destroy the purpose of the Contribution Act in encouraging settlements. The Act provides that

any potentially liable person who settles in good faith is discharged from all liability to any other tortfeasor. (Ill. Rev. Stat. 1979, ch. 70, par. 302(c) and (d).) Our supreme court noted in connection with the Act that "[a]s a matter of public policy the settlement of claims should be encouraged." (*Rakowski v. Lucente* (1984), 104 Ill. 2d 317, 325, 472 N.E.2d 791.) If defendants remain liable for implied indemnity among one another, they will have little or no incentive to settle with plaintiff. Unable to buy peace, and doomed to further litigation, defendants will have nothing to lose by refusing to settle.

A number of cases in this court have addressed the status of implied indemnity under the Contribution Act. (*E.g., Allison v. Shell Oil Co.* (1985), 133 Ill. App. 3d 607, 479 N.E.2d 333; *Holmes v. Sahara Coal Co.* (1985), 131 Ill. App. 3d 666, 475 N.E.2d 1383; *Morizzo v. Laverdure* (1984), 127 Ill. App. 3d 767, 469 N.E.2d 653; *Lowe v. Norfolk & Western Ry. Co.* (1984), 124 Ill. App. 3d 80, 463 N.E.2d 792; *LeMaster v. Amsted Industries, Inc.* (1982), 110 Ill. App. 3d 729, 442 N.E.2d 1367; *Van Jacobs v. Parikh* (1981), 97 Ill. App. 3d 610, 422 N.E.2d 979. See also *Jethroe v. Koehring Co.* (S.D. Ill. 1985), 603 F. Supp. 1200; *U.S. Home Corp. v. George W. Kennedy Construction Co.* (N.D. Ill. 1984), 601 F. Supp. 84.) these cases cannot be reconciled. We analyze several of them in order to illustrate the principles which we have discussed.

In *Van Jacobs v. Parikh* (1981), 97 Ill. App. 3d 610, 422 N.E.2d 979, plaintiff filed a wrongful-death action against two defendants, the driver of the automobile which collided with the decedent's motorcycle and the manufacturer of the helmet worn by the decedent. The manufacturer filed a third-party complaint against the driver, but the driver settled with plaintiff before trial, and the trial court dismissed the third-party complaint. This court noted that *Skinner* eliminated the need for implied indemnity based on active-passive negligence, and held that the manufacturer failed to state a cause of action for indemnity under the classical formulation which preceded the active-passive doctrine. (97 Ill. App. 3d 610, 612-13, 422 N.E.2d 979.) The *Van Jacobs* court stated:

> "The contribution act has not extinguished indemnity in Illinois but instead, permits the courts to place indemnity back upon its theoretical foundation. We therefore follow *Muhlbauer* and its progeny and hold that in addition to a qualitative distinction between the conduct of the parties, a cause of action for indemnity requires a duty to indemnify, arising not from the relative fault of the parties, but from the pre-tort relationship between the parties." (97 Ill. App. 3d 610, 613, 422

N.E.2d 979.)

The court offered lessor-lessee and employer-employee relationships as examples of relationships giving rise to a duty to indemnify. 97 Ill. App. 3d 610, 612, 422 N.E.2d 979.

Initially, we note our agreement with the essential holding of *Van Jacobs*, that active-passive indemnity no longer exists. According to *Van Jacobs*, a third-party is not entitled to indemnity unless a common law duty to indemnify is alleged. In this case, San-Dee has alleged no such duty. The relationship alleged here is an employer-employer relationship, and San-Dee admits in its brief on remand that "Ayala was acting for the mutual benefit of Brookshore and San-Dee." We are aware of no common law rule governing indemnity in such a case and it appears to the contrary that the common law permitted contribution among multiple employers of a negligent employee. (See Leflar, 81 U. Pa. L. Rev. 130, 142, and cases cited therein.) Therefore, the rationale in *Van Jacobs* supports the trial court's dismissal of San-Dee's third-party complaint.

We believe, however, that *Van Jacobs'* reliance on *Muhlbauer v. Kruzel* (1968), 39 Ill. 2d 226, 234 N.E.2d 790, was misplaced, and that the *Van Jacobs* court did not go far enough. By harkening to *Muhlbauer*, litigants are invited to engage in the same battle of characterization over nebulous pretort relationship and qualitative distinctions in conduct which led to "a myriad of anomalous decisions whose allocation of liability defies predictability and offends equity." (Bua, 25 De Paul L. Rev. 287, 300.) Moreover, the *Van Jacobs* court suggested no reason why employer-employee and lessor-lessee relationships should be treated differently under the Contribution Act, which by its terms applies to "persons *** subject to liability in tort arising out of the same injury ***." (See Ill. Rev. Stat. 1979, ch. 70, par. 302(a).) We note that employers and employees as well as lessors and lessees are engaged in contractual relationships, and they could provide for indemnity if they so desired or intended. Where no contract of indemnity is pleaded or proved, the parties subject themselves to the general law of Illinois and the law favors contribution. There is nothing which prevents employers or lessors from seeking 100% contribution (see *Doyle v. Rhodes* (1984), 101 Ill. 2d 1, 19, 461 N.E.2d 382) provided they can convince the jury that their liability is merely "technical" and that they are not "truly" responsible.

*Lowe v. Norfolk & Western Ry. Co.* (1984), 124 Ill. App. 3d 80, 463 N.E.2d 792, further illustrates the need to extinguish implied indemnity. In *Lowe*, a group of plaintiffs sued Norfolk & Western, Monsanto, Dresser Industries and GATX for injuries arising from a

chemical spill. The defendants cross-claimed against one another for contribution and indemnity, but when Monsanto, Dresser and GATX settled with plaintiffs for $7,000,000, the trial court dismissed Norfolk's cross-claims. The jury found against Norfolk & Western for $57,000,000, and Norfolk appealed from the dismissal of the cross-claims. The *Lowe* court found that the contribution claims were properly dismissed, but held that claims for implied indemnity should have continued. The *Lowe* court reasoned that upstream indemnity in products liability differed from active-passive indemnity (124 Ill. App. 3d 80, 97, 463 N.E.2d 792), and concluded that the policy underlying strict liability prevailed over the encouragement of settlements under the contribution Act. (124 Ill. App. 3d 80, 98-99, 463 N.E.2d 792.) Addressing the parties' allegations of pre-tort relationship, the *Lowe* court stated that "N & W was the carrier and in control of the tanker, manufactured by GATX incorporating a part made by Dresser; the cargo belonged to Monsanto," and further commented that "[w]e do not regard Monsanto's status as lessor as being qualitatively different from a manufacturer." 124 Ill. App. 3d 80, 98, 463 N.E.2d 792.

We believe that the reasoning in *Lowe* is flawed in several respects, and the implications of the case are ominous. Although the *Lowe* court compared the policies of strict liability and contribution, the policy of strict liability is fulfilled by releasing plaintiffs from proof of privity and negligence, and by imposing joint and several liability upon the defendants in the distributive chain. (See *Coney v. J.L.G. Industries, Inc.* (1983), 97 Ill. 2d 104, 454 N.E.2d 197.) In *Lowe*, these policies were fulfilled, since defendants perceived that they might be found liable, and chose to settle with plaintiffs. The true question in *Lowe* was whether the policy underlying implied indemnity should prevail over the policy supporting contribution, including the encouragement of settlement. The *Lowe* court in effect rewarded Norfolk & Western, the party that refused to settle. Defendants like Monsanto, Dresser and GATX will be reluctant to settle such cases in the future, knowing that they will be forced to litigate implied indemnity claims.

The opinion in *Lowe* also seems to hold that a pretort relationship exists so long as the parties were not total strangers before the occurrence. Yet *Lowe* offers no principled reason why a carrier-manufacturer, manufacturer-lessor (cargo owner) relationship should give rise to an implied right of indemnity. Indeed, it is difficult to tell who should be the indemnitor and who should be the indemnitee. Moreover, *Lowe* offers no justification for choosing implied indemnity over

contribution in upstream products liability cases. Contribution can accomplish the same results, and can do so without forcing the jury to apply artificial concepts of implied indemnity. We are confident that jurors can understand why the originator of a defective product should bear the largest portion of damages, and that they can weigh the relative responsibility of strictly liable defendants as well as negligent ones. *Cf. Coney v. J.L.G. Industries, Inc.* (1983), 97 Ill. 2d 104, 116-18, 454 N.E.2d 197.

We believe that *Morizzo v. Laverdure* (1984), 127 Ill. App. 3d 767, 469 N.E.2d 653, points in the right direction. In *Morizzo*, plaintiff sued a general contractor and subcontractor in connection with the collapse of his building. The subcontractor filed a third-party complaint against the general contractor and an architect. The general contractor settled with plaintiff and sought dismissal of the third-party complaint under the Contribution Act. The trial court denied the motion, but certified the issues for appeal. This court reversed, holding that a cause of action for active-passive indemnity no longer exists in Illinois. 127 Ill. App. 3d 767, 774, 469 N.E.2d 653.

In a well-reasoned opinion, Justice Downing compared the Contribution Act to three statutory reference sources available to the Illinois legislature at the time the Act was passed. (See N.Y. Civ. Prac. sec. 1404(b) (McKinney 1976); Uniform Contribution Among Tortfeasors Act, 12 Uniform Laws Annotated 63-64 (1975); 1976 Report of the Illinois Judicial Conference 198.) The majority opinion noted that all three sources contained a provision expressly retaining the right to indemnity, but that the Contribution Act contained no such provision. (*Morizzo v. Laverdure* (1984), 127 Ill. App. 3d 767, 772, 469 N.E.2d 653.) The majority considered this to be a factor in legislative intent, but not dispositive of the continued existence of implied indemnity. (127 Ill. App. 3d 767, 773, 469 N.E.2d 653.) Accordingly, the majority decided the case on the narrower ground that active-passive indemnity was abolished. (127 Ill. App. 3d 767, 774, 469 N.E.2d 653.) We note that the facts in *Morizzo* indicate a pretort relationship between indemnitor and indemnitee, that of contractor and subcontractor. Therefore, the majority may be understood to disapprove the broad view of pretort relationships espoused in other cases.

Interestingly, Justice Downing concurred with his own majority opinion to state:

> "*** I believe that with the passage of the contribution Act, it is reasonable to conclude that the legislature intended that, without qualification, implied indemnity should no longer exist.

I see no reason to distinguish between vicarious liability, indemnity in tort cases, or cases alleging 'upstream' strict liability." (*Morizzo v. Laverdure* (1984), 127 Ill. App. 3d 767, 775, 469 N.E.2d 653 (Downing, J., specially concurring).)

We agree with Justice Downing. We consider that the historical relationship between indemnity and contribution, the policies supporting the adoption of contribution by our supreme court, the legislature's intent in passing the Contribution Act evidenced by what was said and what was not said, the broad statutory scheme and the specific language of the Act setting forth the general application of contribution (Ill. Rev. Stat. 1979, ch. 70, par. 302(a)), all weigh in favor of a finding that implied indemnity has been abolished.

■ Finally, we apply these principles to the issues in this case, as remanded to us. We hold that implied indemnity no longer exists in Illinois in view of the Contribution Act. Accordingly, we find that San-Dee did not state a cause of action for implied indemnity, and dismissal of count I as pleaded was proper. However, we believe that San-Dee's allegations in count I, that Ayala was controlled and directed by Brookshore and loaned with his consent to Brookshore, stated a cause of action for contribution under the contribution Act. We consider that the relative degree to which San-Dee and Brookshore controlled Ayala is a matter which the jury should consider in apportioning damages. We therefore reverse the dismissal of count I and remand to the trial court with instructions to permit San-Dee to replead count I as a contribution claim.

For the foregoing reasons, the judgment of the circuit court is reversed and remanded with instructions.

Reversed and remanded.

MEJDA, P.J.,* and PINCHAM, J., concur.

---

*This opinion was adopted as the opinion of the court prior to the retirement of Presiding Justice Mejda on November 30, 1985.