**CENTRAL ILLINOIS SAVINGS & LOAN ASSOCIATION, Plaintiff,**

v.

**DUPAGE COUNTY BANK OF GLENDALE HEIGHTS, et al., Defendants.**

**No. 85 C 3451.**

United States District Court, N.D. Illinois, E.D.

Nov. 29, 1985.

Supplemental Opinion and Order Jan. 7, 1986.

James S. Barber, Arvey, Hodes, Costello & Burman, Chicago, Ill., for Dupage Bank.

Kenneth L. Cunniff, Chicago, Ill., for Powers.

Morton Denlow, Carolyn J. Gallagher, Dardick & Denlow, Chicago, Ill., for Leskovisek and Otten.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Central Illinois Savings & Loan Association ("Central") originally launched this multiparty litigation by filing a ten-count Complaint (the "Central Complaint") against DuPage County Bank of Glendale Heights ("Bank") and several of Bank's directors, officers and employees, as well as two other banks.[1] Central charges Bank with:

    1. a "pattern of racketeering activity" in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968 (Count I);

    2. breach of contract (Count VIII); and

    3. common law fraud (Count IX);

all arising out of Bank's sale to Central of a group of promissory notes secured by real estate mortgages. Bank has in turn filed an amended Third-Party Complaint (the "Bank Complaint")[2] under Fed.R. Civ.P. ("Rule") 14(a) against Gloria Andrews Leskovisek ("Leskovisek"), Joan Otten ("Otten"), W. Jeanne Powers ("Powers") and three other individuals,[3] seeking recovery via implied indemnity.

Leskovisek, Otten and Powers now move under Rule 12(b)(6) to dismiss the DuPage Complaint. For the reasons stated in this memorandum opinion and order, those motions are granted.

### Facts [4]

On January 20, 1983 Central purchased 16 promissory notes—each secured by a

---

1. On August 27, 1985 Central voluntarily dismissed Heritage Standard Bank & Trust Company without prejudice.

2. Bank has also filed a cross-claim for indemnity against three of the other defendants named in the Central Complaint.

3. Originally the Bank Complaint also named five other individuals as third-party defendants. On June 27, 1985 Bank voluntarily dismissed those others without prejudice.

4. For purposes of the current Rule 12(b)(6) motion, this Court has accepted as true the well-

real estate mortgage—from Bank for a total price of approximately $750,000 (Bank Ans. ¶ 4(d)). Bank represented to Central each mortgage was current (Central Complaint Ex. B), and Bank continues to assert that was so (Bank Ans. ¶ 4(c)). But Central premises its Complaint on the allegation the mortgages were in default when Bank assigned them to Central (Central Complaint ¶ 4(e)).

Central's loan policy required it to examine the mortgage documents before acquiring them for its loan portfolio (Bank Complaint ¶ 13). Hence before assigning the 16 notes and mortgages to Central, Bank turned each loan file over to Central to allow Central to check the borrower's payment history (id.). Those files contained receipts indicating some borrowers had made delinquent payments (id.). Nevertheless Central purchased the 16 notes and mortgages.

In April 1985 Central filed this action, advancing a melange of claims. Bank contends any liability it might owe to Central would spring not from its own actions but rather from the failure of Leskovisek, Otten and Powers[5] to exercise due care in examining the loan file. That negligence, says Bank, entitles it to indemnification.

Leskovisek, Otten and Powers counter with three arguments:

1. Implied indemnity in Illinois has been extinguished by the Illinois Contribution Among Joint Tortfeasors Act (the "Act," Ill.Rev.Stat. ch. 70, ¶¶ 301–305).

2. No intentional tortfeasor can obtain indemnity.

3. RICO's comprehensive character indicates Congress intended to preclude a right to indemnity.

pleaded factual allegations in the Bank Complaint, drawing all reasonable factual inferences in Bank's favor. *Wolfolk v. Rivera*, 729 F.2d 1114, 1116 (7th Cir.1984). Because the Bank Complaint is contingent on Bank's liability under the Central Complaint, allegations in the latter document are also accepted as true even though they are disputed in Bank's Amended Answer ("Bank Ans."). Of course no actual findings of fact are made or implied by the recital in the text.

5. Leskovisek was Central's President and one of its directors (Bank Complaint ¶ 4). Otten acted as an Assistant Secretary of Central (id. ¶ 7). Powers was Central's Secretary-Treasurer and one of its directors (id. ¶ 5).

This opinion will first treat briefly with the choice-of-law issue, then consider each of those contentions in turn.

### Choice of Law

Bank seeks indemnity from the third-party defendants on two of Central's claims—the RICO claim (Count I) and the common-law fraud claim (Count IX).[6] Central's RICO claim confers federal-question jurisdiction on this Court under 28 U.S.C. § 1331. Central's common-law claim is properly before this Court under the doctrine of pendent jurisdiction because it "derive[ ] from a common nucleus of operative fact" with the RICO claim (which also sounds in fraud). *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966).

Bank's right to indemnity on Central's RICO claim (if it exists at all) must be grounded in federal law. Cf. *Northwest Airlines, Inc. v. Transport Workers Union of America, AFL–CIO*, 451 U.S. 77, 90, 101 S.Ct. 1571, 1580, 67 L.Ed.2d 750 (1981) (employer's asserted right to contribution from union based on liability for Title VII violation derived either from the federal statute or from federal common law). But despite the "common nucleus" involved in the common-law claim, *United States ex rel. Hoover v. Franzen*, 669 F.2d 433, 437 (7th Cir.1982) (footnote omitted) explains state law—here Illinois law[7]—controls that claim:

[T]his crucial choice-of-law issue [ ] is implicit in the exercise of pendent jurisdiction. The pendent state law claim is governed in all respects by state law.... Merely because the state law claim is in federal court does not lead to the application of federal law. As *Erie Railroad*

6. All the disputants are strangely silent as to Central Complaint Count VIII's breach of contract claim, addressing the indemnification issue solely in terms of Bank's potential tort liability (even though the Bank Complaint's prayer for indemnification speaks in terms of *any* liability on Bank's part). Perhaps all the parties recognize Bank's breach-of-contract liability could not trigger a right of indemnity in any event. See this Court's discussion of that issue in *U.S. Home Corp. v. George W. Kennedy Construction Co.*, 617 F.Supp. 893, 895 (N.D.Ill. 1985).

7. All the operative facts of the Central-Bank transaction were Illinois-based.

*Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) and its offspring make clear, absent a valid and controlling federal law, state law governs a state law claim (even in nondiversity cases).

Even though the parties have been inattentive to that distinction, citing federal and state precedents indiscriminately, this opinion will analyze Bank's indemnity claims on those separate bases.

*Indemnity for Liability Based on Common-Law Fraud*

■ Complaint Count IX, which sounds in common-law fraud, accuses Bank of fraudulently representing to Central that the notes and mortgages were not in default. Bank seeks to invoke the implied indemnity concept to shift to the third-party defendants Bank's entire potential liability to Central.

Leskovisek, Otten and Powers retort the implied indemnity doctrine is dead in Illinois, having been extinguished by the Act. In that respect Act § 302(a) is its critical provision:

> Except as otherwise provided in this Act, where 2 or more persons are subject to liability in tort arising out of the same injury to person or property, or the same wrongful death, there is a right of contribution among them, even though judgment has not been entered against any or all of them.

Bank first contends Act § 302(a) applies only to personal injury claims and thus does not affect the viability of implied indemnity as a risk-shifting concept in this business fraud case. It is hard to see how that can be advanced with a straight face:[8] Section 302(a) speaks of "liability in tort" without any limitation, and it explicitly extends its coverage to "injury to person *or property.*" Fraud claims are unquestionably within the plain language of Act § 302(a).

Bank next says the traditional common-law right to indemnity based on a qualitative distinction between the alleged negligence of the indemnitor and indemnitee is preserved by Act § 303:

> The pro rata share of each tortfeasor shall be determined in accordance with his relative culpability.

According to Bank, the term "relative culpability" preserves the common-law active-passive distinction. That contention fails for two reasons.

First, Act § 303 comes into play only after Act § 302 has established the availability or unavailability of contribution or indemnity. If (but only if) the Act § 302 answer is "yes," Act § 303 simply defines the comparative extent of each contributing tortfeasor's liability. Hence Act § 303 returns the relevant inquiry for current purposes to Act § 302.

Second, Bank wholly ignores the impact on the implied indemnity concept (one of total risk-shifting) of the Act's technique of dividing liability according to culpability. As this Court recently pointed out in *U.S. Home Corp. v. George W. Kennedy Construction Co.*, 617 F.Supp. 893, 896–97 (N.D.Ill.1985):

> [I]t should be obvious from the very origins of implied indemnity that passage of the Act, which removed a good part of the policy underpinnings from the indemnity doctrine, would work some dramatic changes in indemnity as well as contribution. And that has in fact taken place.

\*  \*  \*  \*  \*  \*

Today, with a contribution regime in place, the rationale for any kind of full shifting of responsibility (under any label) has lost much of its force. And so it is that *Morizzo* [*v. Laverdure* ], 127 Ill. App.3d [767,] 774 [83 Ill.Dec. 46, 51], 469 N.E.2d [653,] 658 [ (1st Dist.1984) ] teaches that, absent an express contract for indemnification (and none is involved here), implied indemnification is not even arguably viable after passage of the Act except perhaps in two situations:

> However, none of these [post-Act] cases [including *Van Jacobs v. Parikh,* 97 Ill.App.3d 610 [52 Ill.Dec. 770], 422 N.E.2d 979 (1st Dist.1981) and *Lowe v. Norfolk & Western Railway Co.,* 124 Ill.App.3d 80 [79 Ill.Dec. 238], 463 N.E.2d 792 (5th Dist.1984) ] addressed

---

**8.** Less politely, that kind of wholly empty legal position is a prime candidate for Rule 11 treatment.

the question raised by the failure of the legislature to provide for the specific preservation of the right of express or implied indemnity.

As we interpret *Van Jacobs*, this court held that implied indemnity is not extinguished by the passing of the Contribution Act for cases involving some pre-tort relationship between the parties which gives rise to a duty to indemnify, *e.g.*, in cases involving vicarious liability (lessor-lessee; employer-employee; owner and lessee; master and servant). In *Lowe*, this court held that implied indemnity was still viable with respect to "upstream" claims in a strict liability action.

Except possibly for those causes of action based on the theories of indemnity just enumerated, it is our opinion that the Contribution Act extinguished a cause of action for active-passive indemnity in Illinois.

Post-*Morizzo* case law has taught that *only* the four specified pre-tort relationships remain as potential sources for post-Act indemnity (rather than the listed relationships being merely exemplary). *Allison v. Shell Oil Co.*, 133 Ill.App.3d 607, 611, 88 Ill.Dec. 720, 723, 479 N.E.2d 333, 336 (5th Dist.1985).[9]

This case (like *U.S. Home*) does not involve an express contract for indemnification. Nor does Bank present an "upstream" claim in a strict liability action. Consequently Bank's indemnification claim must depend on the existence of "some pre-tort relationship between the parties which gives rise to a duty to indemnify."

*Morizzo*, 127 Ill.App.3d at 774, 83 Ill.Dec. at 51, 469 N.E.2d at 658.

Bank says it is not directly liable for the alleged fraud perpetrated on Central. Instead Bank urges it is only vicariously liable for the negligent failure of Central's employees—Leskovisek, Otten and Powers—to examine the mortgage files adequately before the assignment. It is an understatement to say that is not the sort of "vicarious liability" situation identified in *Morizzo*, for Central's fraud charge against Bank rests not on an implied imputation of Central's employees' negligence to Bank, but rather on Bank's own allegedly *intentional* misrepresentations.[10]

There is another (and wholly independent) fatal flaw in Bank's claim for indemnity under Illinois law. *Chicago College of Osteopathic Medicine v. George A. Fuller Co.*, 719 F.2d 1335, 1342 (7th Cir.1983) (emphasis added) teaches such a right must in all events stem from a *contractual* relationship between the prospective indemnitor and indemnitee:

As we interpret these cases, we hold that Illinois law as it now stands does allow a third party action for indemnity *where the third party plaintiff and the third party defendant were contracting parties* and the third party plaintiff bears no independent fault in the harm to the original plaintiff.

Here no contractual relationship ever existed between Bank and Leskovisek, Otten or Powers. Bank's bald assertion of a pre-tort relationship, stemming from Central's duty to examine the loan files delivered by

---

**9.** As this Court said in *U.S. Home*, even this analysis gives Bank the benefit of the doubt as to current Illinois implied indemnity doctrine. Earlier this year *Holmes v. Sahara Coal Co.*, 131 Ill.App.3d 666, 676, 86 Ill.Dec. 816, 822–823, 475 N.E.2d 1383, 1389–90 (5th Dist.1985) surveyed the field (including extensive law review discussion) and concluded in a split decision "that the Contribution Act has extinguished all actions for implied indemnity...." *Holmes* obviously felt free to resolve that issue for itself in view of the Illinois Supreme Court's 1984 declinations of an invitation to do so, awaiting further development in the Appellate Courts. *Heinrich v. Peabody International Corp.*, 99 Ill.2d 344, 350–51, 76 Ill.Dec. 800, 803–04, 459 N.E.2d 935, 938–39 (1984); *Simmons v. Union Electric Co.*, 104 Ill.2d 444, 453, 85 Ill.Dec. 347, 351, 473 N.E.2d

946, 950 (1984). Though *Holmes* has been questioned even within the Fifth Appellate District (see *Allison*, 133 Ill.App.3d at 609–11, 612, 88 Ill.Dec. at 722–23, 724, 479 N.E.2d at 335–36, 337, which follows the *Morizzo* analysis), if it were to provide the rule of decision here, this opinion's discussion of the indemnity claim under Illinois law would have been reduced to a single sentence rejecting it.

**10.** This does not of course foreclose the possibility that negligence by Central's employees in examining the mortgage documents might render Central's reliance on Bank's misrepresentations unreasonable and thus defeat Central's claim in the first instance. That prospect, however, must remain for the future—it does not vitiate Central's claim in Rule 12(b)(6) terms.

Bank before the assignment, bears no resemblance to the type of relationships identified in *Morizzo:* Each of the lessor-lessee, employer-employee, owner-lessee and master-servant pairings is directly contractual. Bank's allegation of pre-tort contacts with Leskovisek, Otten and Powers does not meet the test of the Illinois cases.

Bank's indemnity claim under Illinois law thus falls, fatally wounded from several directions. It is needless to prolong the discussion by applying the Act in a wholly different way: to determine the comparative liability for that fatality.

### *Indemnity for Liability under RICO*

■■■ Bank also seeks indemnity for its potential liability to Central under the RICO claim stated in Complaint Count I. In response, Leskovisek, Otten and Powers correctly contend a defendant subject to liability for a RICO violation cannot obtain indemnification.

During the last five years the Supreme Court has considered—and in each case rejected—defendants' rights to obtain contribution for violations of the Equal Pay Act of 1963 and Title VII of the Civil Rights Act of 1964 (*Northwest Airlines,* 451 U.S. 77, 101 S.Ct. 1571) and of the Sherman and Clayton Acts (*Texas Industries, Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981)). Although those cases addressed only claims for contribution, their rationale equally bars Bank's claim for indemnity. *Anderson v. Local Union No. 3, International Brotherhood of Electrical Workers,* 582 F.Supp. 627, 633 (S.D.N.Y.), *aff'd,* 751 F.2d 546 (2d Cir.1984).

*Northwest Airlines,* 451 U.S. at 90, 101 S.Ct. at 1580 teaches Bank's right to indemnity under RICO could arise either (1) as an implied cause of action under that statute or (2) as a part of the federal common law. Neither theory works in this case.

### 1. Implication of a Private Right of Action

To determine whether a federal statute impliedly creates a private right of action, this Court must focus on congressional intent. *Daily Income Fund, Inc. v. Fox,* 464

U.S. 523, 104 S.Ct. 831, 839, 78 L.Ed.2d 645 (1984) once again identifies the familiar considerations this Court should explore to that end:

> That intent may in turn be discerned by examining a number of factors, including the legislative history and purposes of the statute, the identity of the class for whose particular benefit the statute was passed, the existence of express statutory remedies adequate to serve the legislative purpose, and the traditional role of the states in affording the relief claimed.

Without question RICO's statutory language does not expressly create a right to indemnity in favor of RICO defendants. Nor does it suggest one. Certainly RICO was *not* "enacted for the benefit of a special class of which [Bank] is a member," *Cannon v. University of Chicago,* 441 U.S. 677, 689, 99 S.Ct. 1946, 1953, 60 L.Ed.2d 560 (1979). On the contrary, Bank's liability to Central on its RICO claim will depend on Bank itself having committed RICO-prohibited criminal conduct. That necessarily would align Bank not as an intended beneficiary of Congress' solicitude, but (*Piper v. Chris-Craft Industries, Inc.,* 430 U.S. 1, 37, 97 S.Ct. 926, 947, 51 L.Ed.2d 124 (1977)):

> [t]o the contrary, [as] a member of the class whose activities Congress intended to regulate for the protection and benefit of an entirely distinct class....

RICO's structure also counsels against recognition of an implied right to indemnity in Bank's favor. RICO expressly provides for both criminal and private civil enforcement. Moreover, allowing a right to indemnity would frustrate the very purpose of the treble-damage remedy created by RICO (28 U.S.C. § 1964(c)). As *Texas Industries,* 451 U.S. at 639, 101 S.Ct. at 2066 put it (after quoting the same language from *Piper* ):

> The very idea of treble damages reveals an intent to punish past, and to deter future, unlawful conduct, not to ameliorate the liability of wrongdoers.

Finally, RICO's legislative history contains no support for DuPage's insistence on a right to indemnity.[11] That silence joins

---

**11.** Portions of RICO's scattered legislative history may be found at H.R.Rep. No. 1549, 91st Cong., 2d Sess. 1, reprinted in 1970 U.S.Code Cong. & Ad.News 4007 and S.Rep. No. 617, 91st Cong., 1st Sess. 1 (1969).

with all the other already-discussed factors to compel the conclusion Congress did not intend to create an implied right to indemnity from RICO-based liability.

## 2. Federal Common-Law Right to Indemnity

Among the shaky underpinnings for *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) was its pronouncement that (*id.* at 78, 58 S.Ct. at 822):

There is no federal general common law. Though the error of *Erie*'s subversion of the Supremacy Clause [12] is too well entrenched to get a fresh look at this point, its overbroad statement about the total absence of federal common law has not proved similarly untouchable. *Texas Industries,* 451 U.S. at 640, 101 S.Ct. at 2066 acknowledges federal courts have in fact fashioned federal common law in "some limited areas":

those in which a federal rule of decision is "necessary to protect uniquely federal interests," *Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398, 426 [84 S.Ct. 923, 939, 11 L.Ed.2d 804] (1964), and those in which Congress has given the courts the power to develop substantive law, *Wheeldin v. Wheeler,* [373 U.S. 647, 652, 83 S.Ct. 1441, 1445, 10 L.Ed.2d 605 (1963)].

Bank's claim for indemnity does not qualify under those or any other theories.

RICO's civil remedies, and the federal interests they assertedly protect, are at this very moment the subject of active congressional debate (the aftermath of *Sedima, S.P.R.L. v. Imrex Co.,* — U.S. —, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985)). But for current purposes the rule of decision must be that expressed in *Texas Industries,* 405 U.S. at 642, 101 S.Ct. at 2067, in rejecting a federal common-law right to contribution under the antitrust laws (*Texas Industries* is persuasive both because RICO's civil remedies drew heavily on the remedies structure in the antitrust field and because the *Texas Industries* analysis is inherently probative):

Nevertheless, a treble-damages action remains a private suit involving the rights and obligations of private parties. Admittedly, there is a federal interest in the sense that vindication of rights arising out of these congressional enactments supplements federal enforcement and fulfills the objects of the statutory scheme. Notwithstanding that nexus, contribution among antitrust wrongdoers does not involve the duties of the Federal Government, the distribution of powers in our federal system, or matters necessarily subject to federal control even in the absence of statutory authority. Cf. *Bank of America v. Parnell,* 352 U.S. 29, 33 [77 S.Ct. 119, 121, 1 L.Ed.2d 93] (1956). In short, contribution does not implicate "uniquely federal interests" of the kind that oblige courts to formulate federal common law.

It is equally true that Bank's assertion of a right to indemnity under RICO primarily affects only the division of liability between private parties. No "uniquely federal interests" are involved.

Moreover, as this opinion's earlier discussion has shown, nothing in RICO's statutory language or legislative history suggests Congress intended federal courts to expand or alter the civil remedies already created by RICO. As *Northwest Airlines,* 451 U.S. at 97, 101 S.Ct. at 1583 said:

In almost any statutory scheme, there may be a need for judicial interpretation of ambiguous or incomplete provisions. But the authority to construe a statute is fundamentally different from the authority to fashion a new rule or to provide a new remedy which Congress has decided not to adopt. Cf. *Mobil Oil Corp. v. Higginbotham,* 436 U.S. 618, 625 [98 S.Ct. 2010, 2015, 56 L.Ed.2d 581 (1978)]. The presumption that a remedy was deliberately omitted from a statute is strongest when Congress has enacted a comprehensive legislative scheme including an integrated system of procedures for enforcement.

That last sentence aptly describes RICO, and it is not for this Court to reshape the remedial structure Congress has created.

As if that were not enough, indemnity concepts do not fit the RICO claim here in any case. Central predicates Bank's RICO liability on its alleged mail and wire fraud

---

**12.** There is no need to dwell at length on *Erie*'s deficiencies in scholarship. See 2 W.W. Crosskey, *Politics and the Constitution in the History of the United States,* ch. xxiii-xxvi (1953); cf.

Friendly, *In Praise of Erie—and of the New Federal Common Law,* 39 N.Y.U.L.Rev. 383 (1964).

in violation of 18 U.S.C. §§ 1341 and 1343. Intent to defraud is an essential ingredient of each offense; see, e.g., *United States v. Pintar*, 630 F.2d 1270, 1280 (8th Cir.1980) (mail fraud); *United States v. Dorfman*, 532 F.Supp. 1118, 1123 (N.D.Ill.1981) (wire fraud). And indemnity "cannot be allowed in favor of an intentional tortfeasor." *Anderson*, 582 F.Supp. at 633. Thus Bank's claim for indemnity would fail regardless of whether this Court were to recognize such a hypothetical right under some civil RICO claims.

### Conclusion

Both of Bank's claims for indemnity fail to state a cause of action. This Court therefore dismisses Bank's Complaint against Leskovisek, Otten and Powers.

### SUPPLEMENTAL OPINION AND ORDER

On November 29, 1985 this Court issued its opinion (the "Opinion") dealing in part with the current status of the implied indemnity doctrine in Illinois, particularly in light of the Illinois Contribution Among Joint Tortfeasors Act, Ill.Rev.Stat. ch. 70, ¶¶ 301–305. This brief supplemental opinion is issued sua sponte in light of last month's decision of the Illinois Appellate Court for the First Appellate District in *Heinrich v. Peabody International Corp.*, 139 Ill.App.3d 289, 93 Ill.Dec. 544, 486 N.E.2d 1379 (1985).

When this Court wrote the Opinion, it rejected implied indemnity in the context of this case, though it recognized that then-existing Illinois Appellate Court decisions might find the doctrine still viable under special circumstances not present here. *Heinrich*, on remand from the Illinois Supreme Court (99 Ill.2d 344, 76 Ill.Dec. 800, 459 N.E.2d 935 (1984)), has now gone all the way: It spurns implied indemnity in its entirety (139 Ill.App.3d 289, at 301–02, 93 Ill.Dec. 544, at 553, 486 N.E.2d 1379, at 1388):

> We consider that the historical relationship between indemnity and contribution, the policies supporting the adoption of contribution by our supreme court, the legislature's intent in passing the Contribution Act evidenced by what was said and what was not said, the broad statutory scheme and the specific language of the Act setting forth the general application of contribution (Ill.Rev.Stat.1979, ch.

70, par. 302(a)), all weigh in favor of a finding that implied indemnity has been abolished.

Under this Court's view of the workings of *Erie v. Tompkins* (see, e.g., *Abbott Laboratories v. Granite State Insurance Co.*, 573 F.Supp. 193, 196–200) (N.D.Ill.1983)), where there is a division of authority among Illinois Appellate Districts (and there is), *Heinrich* controls this case. Accordingly the Opinion's ruling rejecting implied indemnity here is reconfirmed unconditionally.